UNITED STATES of America by John N. MITCHELL, Attorney General, Plaintiff,

v.

John S. FRAZER, as Director, Alabama Personnel Department, Tom J. Ventress, as Chairman, State Personnel Board, James A. Simpson, as a Member, State Personnel Board, Ralph W. Adams, as a Member, State Personnel Board, Frank House, as Commissioner and Director, Alabama Department of Pensions and Security, Robert G. Kendall, Jr., as Director, Alabama Department of Industrial Relations, Ira L. Myers, as State Health Officer and Director, Alabama Department of Public Health, Ernest Stone, as Superintendent and Director, Alabama Department of Education, Stonewall B. Stickney, as State Mental Health Officer and Director, Alabama Department of Mental Health, and J. Frank Manderson, as Director, Alabama Department of Civil Defense, Defendants.

Civ. A. No. 2709-N.

United States District Court, M. D. Alabama, N. D.

July 28, 1970.

See also D.C., 297 F.Supp. 319.

Jerris Leonard, Asst. Atty. Gen., U. S. Dept. of Justice, David L. Rose, Harold Himmelman and Andrew J. Ruzicho, Attys., U. S. Dept. of Justice, Washington, D. C., and Ira DeMent, U. S. Atty., Montgomery, Ala., for plaintiff.

MacDonald Gallion, Atty. Gen. of Alabama, Gordon Madison, Mary Lee Stapp, William N. McQueen, Bernard F. Sykes and Jamie L. Pettigrew, Asst. Attys. Gen., J. Eugene Foster, Gen. Counsel, Dept. of Industrial Relations, Thomas W. Thagard, Jr., Sp. Asst. Atty. Gen., of Smith, Bowman, Thagard, Crook and Culpepper, Montgomery, Ala., James A. Simpson, of Lange, Simpson, Robinson & Somerville, Birmingham, Ala., pro se, for defendants.

## MEMORANDUM OPINION

FRANK M. JOHNSON, Jr., Chief Judge.

The United States of America, acting through its Attorney General, brings this action to enforce the requirement of federal statutes and regulations that State personnel who are engaged in the administration of federally financed grant-in-aid programs be recruited, hired and promoted or demoted on a merit basis, without discrimination on the ground of race or color.[1]

The defendants Ventress, Simpson and Adams are members of the Alabama State Personnel Board. The defendant John S. Frazer is the Personnel Director and the head of the Personnel Department of the State of Alabama. As Director, Frazer, together with the State Personnel Board, is responsible for the administration of the Alabama Merit system. The Board has the authority and responsibility of adopting and amending rules and regulations for the administration of the Alabama Merit System. Defendants House, Kendall, Myers, Stone, Stickney and Manderson are the heads of the State Departments of Pensions and Security, Industrial Relations, Public Health, Education, Mental Health, and Civil Defense, respectively. These departments administer the federal grant-in-aid programs which are subject to the federal merit standards statutes set out above in footnote 1. Each of the defendants has the responsibility—acting within the rules and regulations for the administration of the Alabama Merit System as promulgated by the Alabama State Personnel Board and as administered by the Alabama State Personnel Director—for the selection, appointment, promotion, demotion and transfer of personnel and for the recruitment of personnel in his department or agency.

The case is now submitted upon the several issues formulated by the pleadings, the evidence, and the briefs and

1. The federally financed grant-in-aid programs involved are: Old Age Assistance and Medical Assistance for the Aged, 42 U.S.C. § 302(a) (5); Aid to Families with Dependent Children, 42 U.S.C. § 602 (a) (5); Maternal and Child Health and Crippled Children's Services, P.L. 90–248, Title III, §§ 301, 304(a) (42 U.S.C.A. § 705(a) (3)); Child Welfare Services, P.L. 90–248, Title II, § 240(c) (42 U.S. C.A. § 622); Aid to the Blind, 42 U.S.C. § 1202(a) (5); Aid to the Permanently and Totally Disabled, 42 U.S.C. § 1352(a) (5); Combined Grants for the Aged, Blind, Disabled and Medical Assistance for the Aged, 42 U.S.C. § 1382(a) (5); Medical Assistance, 42 U.S.C. § 1396a (a) (4); Hospital Survey and Construction, 42 U.S.C. § 291d(a) (8); Grants for Comprehensive Health Planning and Public Health Services, 42 U.S.C. § 246 (a) (2) (f), § 246(d) (2) (f); Grants for Unemployment Compensation Administration, 42 U.S.C. § 503(a) (1); Grants for State Public Employment Offices, 29 U.S.C. § 49, P.L. 88–136, Title I, § 101, 20 C.F.R. 602.15; Work Experience and Training, 42 U.S.C. §§ 2922, 2923; Programs for Older Americans, 42 U.S.C. §§ 3023, 3032; Civil Defense Financial Assistance, 50 U.S.C.Appendix 2286(a) (4); and 45 C.F.R. Part 70.

arguments. The evidence consisted of extensive depositions and exhibits thereto and the oral testimony and exhibits thereto offered in support of and in opposition to the respective positions of the parties. This Court, as authorized by Rule 52, Federal Rules of Civil Procedure, now incorporates in this memorandum opinion the appropriate findings of fact and conclusions of law.[2]

## I

The main thrust of the defense in this case is a challenge to the right of the United States to bring this action. The defendants made their challenge by motions contending that the United States does not have the authority to enforce by judicial proceedings the terms and conditions which Congress, by statute, and federal officials, by regulation (acting pursuant to congressional authority), have attached to the expenditure of federal funds. The defendants also challenge the validity of the federal regulation, 45 C.F.R. 70.4, promulgated by the United States Secretaries of Health, Education and Welfare, Labor and Defense, which requires that states administering programs that receive federal assistance pursuant to the federal merit standards statutes adopt laws, rules and regulations expressly prohibiting discrimination on the ground of race, color, national origin, religious or political affiliation. This regulation also requires that the states provide appropriate procedures for appealing cases of alleged discrimination on any of those grounds.

When reviewing the sufficiency of a complaint against a motion to dismiss, the allegations of the complaint are to be taken as true. No citation of authorities is necessary to sustain this basic proposition. Thus, from the allegations of the complaint, defendants have followed and continue to follow a policy of racial discrimination against Negroes in the selection and appointment of employees in the Alabama agencies here involved. Furthermore, this Court is informed by brief of the United States —and this is not denied by the defendants—that the six State agencies involved in this case receive and administer annually approximately $110,000,000 in federal funds under the merit standards statutes. There is no question that these discriminatory practices engaged in by the defendants, as the United States alleges, constitute violations of the merit system requirements of federal law. 45 C.F.R. 70.4.

The defendants' argument that the enactment of Titles VI and VII of the Civil Rights Act of 1964 "may have nullified" the authority of the Secretaries of Defense, Health, Education and Welfare, and Labor to adopt 45 C.F.R. 70.4 is without merit. Title VII, "For the purposes of this title", defines the term "employer" in such a manner as to exclude states or political subdivisions. Section 701(b), 42 U.S.C. § 2000e(b). This exclusion from the coverage of Title VII was not intended to repeal the authority conferred by other statutes. The limited definition of "employer" was consistent with the congressional concern, under Title VII, to prohibit discrimination by commercial enterprises. Local Union No. 12, United Rubber Cork, Linoleum, and Plastic Workers of America, A.F.L.–C.I.O. v. NLRB, 368 F.2d 12 (5th Cir. 1966), cert. denied 389 U.S. 837; 88 S.Ct. 53, 19 L.Ed.2d 99; United States v. Jefferson County Board of Education, 372 F.2d 836, 883 (5th Cir. 1966), where the United States Court of Appeals for the Fifth Circuit has held that Title VII was not intended to preempt or repeal other provisions of law prohibiting racial discrimination.

2. At the request of the Court, the parties submitted proposed findings and conclusions. After a review and a re-review of the voluminous evidence taken in this case, this Court has determined that the proposed findings of fact as submitted by the United States in the most part are accurate and supported by substantial evidence. To the extent that the Government's proposed findings are supported by substantial evidence, this Court has incorporated many of those findings in this memorandum opinion.

■ It is true that Section 604 of Title VI makes it clear that Title VI was not intended to be applicable to the employment practices of recipients of federal assistance "except where a primary objective of the Federal assistance is to provide employment" or where discrimination in employment causes discrimination to the beneficiaries. United States v. Jefferson County Board of Education, *supra*. However, the language of Section 604 of Title VI also clearly reflects that that section was not intended to detract from any authority that federal officials might have under other provisions of the law. Thus, neither Title VI nor Title VII preempts or limits the authority that federal officials have to take affirmative action, including the filing of civil actions, designed to reduce or eliminate racial discrimination.

Another substantial challenge—and one the defendants strenuously urge—concerns whether the United States has the authority to enforce by a judicial proceeding the terms and conditions set forth in federal statutes and regulations requiring states to follow merit personnel standards. This Court is clear to the conclusion that the United States does have standing to seek judicial enforcement of the terms and conditions of grants of federal property and that the administrative remedy of termination of assistance was not intended to be and is not exclusive. The argument of the State of Alabama, if it prevailed, would necessitate this Court's telling the United States of America that the only remedy it has in this case is to administratively terminate the federal funds of $110,000,000 a year provided to the State agencies here concerned for assistance to the aged, to families with dependent children, to crippled children's services, for aid to the blind, aid to the permanently and totally disabled, and for other similar programs administered by the defendants for the benefit of United States citizens residing in the State of Alabama.

[4, 5] It is settled law that the United States has the authority to fix the terms and conditions upon which its money allotments to states shall be disbursed. King v. Smith, 392 U.S. 309, 333 N. 34, 88 S.Ct. 2128, 20 L.Ed.2d 1118. Upon this point, the United States Supreme Court stated:

There is of course no question that the Federal Government, unless barred by some controlling constitutional prohibition, may impose the terms and conditions upon which its money allotments to the States shall be disbursed, and that any state law or regulation inconsistent with such federal terms and conditions is to that extent invalid. See Ivanhoe Irrigation District v. McCracken, 357 U.S. 275, 295, 78 S.Ct. 1174, 1185, 2 L.Ed.2d 1313 (1958); State of Oklahoma v. United States Civil Service Comm'n, 330 U.S. 127, 143, 67 S.Ct. 544, 553, 91 L.Ed. 794 (1947).

The law is also clear that the grant of federal assistance may be made upon conditions *that are attached to the grant* and that the *acceptance by the recipient of the grant* to which the conditions and stipulations are attached creates an obligation on the part of the recipient to perform the conditions. United States v. Northern Pacific Ry. Co., 256 U.S. 51, 41 S.Ct. 439, 65 L.Ed. 825, and the cases therein cited. On this point the Supreme Court of the United States stated in McGee v. Mathis, 4 Wall. 143, 71 U.S. 143, 155, 18 L.Ed. 314:

It is not doubted that the grant by the United States to the State upon conditions, and the acceptance of the grant by the State, constituted a contract. All the elements of a contract met in the transaction—competent parties, proper subject-matter, sufficient consideration, and consent of minds. This contract was binding upon the State. * * *

■ There is no controlling law to support the defendants' argument that the United States has no standing to enforce its contractual rights in court

in the absence of specific statutory authority to do so. The law is to the contrary. Rex Trailer Co. v. United States, 350 U.S. 148, 151, 76 S.Ct. 219, 100 L.Ed. 149. It has long been recognized that the United States has the right to bring suit to require the recipient of federal grants to comply with the terms and conditions of the grant. United States v. City and County of San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050.

■ Aside from the contractual aspects of the relationship between the United States and the State of Alabama concerning these grants, there is no necessity for specific statutory authority in order to permit the United States to bring this action. The federal district courts have jurisdiction of any case in which the United States is a party plaintiff, 28 U.S.C. § 1345, and it has been determined upon numerous occasions by the courts of our land that the Attorney General may sue on behalf of the United States by virtue of his office if the United States has an interest to protect. 28 U.S.C. §§ 516–519; Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407.

■■ Here, the interest of the United States is to enforce the terms and conditions of grants of federal funds, namely the $110,000,000 of federal funds being channeled into the State of Alabama for administration and disbursement to needy American citizens by the agencies and the defendants here involved. One of those terms and conditions is that the funds be administered by persons selected on the basis of their merit and fitness rather than on the basis of their race or color. Thus, the interest of the United States in these federally financed programs is not insubstantial, rather it is so considerable that the Government, through its duly constituted officials, including the Attorney General of the United States, has a constitutional obligation to eliminate racial discrimination in their adminis-

tration. Failure on the part of any of these Government officials to take legal action in the event that racial discrimination does exist would constitute dereliction of official duty.

Defendants' reliance upon United States v. Madison County Board of Education, 219 F.Supp. 60 (N.D.Ala.1963), aff'd on other grounds, 326 F.2d 237 (5th Cir. 1964), cert. denied 379 U.S. 929, 85 S.Ct. 324, 13 L.Ed.2d 341, is misplaced. Here, the United States is seeking to enforce the terms and conditions which Congress expressly imposed upon the expenditure of federal funds. To put it another way, the United States is merely attempting to enforce the express terms and conditions which the State of Alabama agreed to meet in receiving federal funds. In the *Madison County* case, there was no express obligation of a contractual nature which the United States was seeking to enforce. Furthermore, see the discussion of United States v. Madison County Board of Education, supra, in Bossier Parish School Board v. Lemon, 370 F.2d 847, 850–851 (5th Cir. 1967).

## II

The evidence in this case reflects that since 1939 the State of Alabama has utilized the same personnel system for its agencies governed by federal merit standards as for other State agencies. The merit standards plan consists of an agreement to comply with the State's statutes and regulations governing personnel practices for all State agencies. In January, 1963, the Secretaries of Defense, Health, Education and Welfare, and Labor, adopted a regulation expressly prohibiting racial discrimination and other nonmerit factors in the employment practices of the State and requiring the adoption by the State of an express statute or regulation prohibiting such discrimination and providing for a system of appeals in such cases.[3] From 1963 until the commencement of this

---

3. Title 55, Code of Alabama, Section 317 expressly prohibits discrimination on the ground of political or religious affiliation. Racial discrimination is not mentioned.

lawsuit in June, 1968, federal officials made repeated but unsuccessful efforts to persuade defendant officials and their predecessors to adopt a regulation expressly prohibiting discrimination on the ground of race or color and containing appropriate provisions for appeals in cases of alleged discrimination.[4] Defendants have repeatedly refused to adopt such a regulation. *Alabama is the only state among the fifty states which has refused to adopt such a regulation.*

Under the Alabama statutes and regulations governing personnel practices, a person seeking State employment generally is required to take an examination; upon passing the examination, the person's name is placed on the register of eligibles for that position (Title 55, Code of Alabama, §§ 305, 307; Rules of the State Personnel Board). Under the Alabama statutes and regulations, when permanent positions become available, applicants who have passed the examination are certified to the employing agency by the Personnel Department in accordance with their geographical availability and in the order of their rank on the employment registers which were established after the giving of the examinations. Rank is determined by the grade on the examination, plus points for veterans' preference. The State of Alabama follows the "rule of three" under which at least three persons are certified as eligible to the appointing authority; the appointing authority need not select the highest ranking individual available, but must select one from among the top three. The State normally certifies other persons who may be considered among the top three if one or more of the first three eligibles declines or fails to reply. If there is one position available, the appointing authority may select one out of three; if there are two positions available, he may

select two from among the top four; and if there are three positions, he may select three from among the top five, and so forth.

The discretion of the appointing officer includes the right to reject an applicant because of his race. This was the unequivocal testimony of John S. Frazer, the Director of the Alabama Personnel Department.

The requirement that persons be certified in the order of their rank on the examination does not apply to temporary positions; for temporary positions, the appointing authority may select any person on the register of those who have passed the examination. When an appointing authority has a vacancy or vacancies, he fills out a form entitled "Request for Certification of Eligibles," and lists the job classification, the location, and the number of vacancies he wishes to fill at that time, and forwards this form to the personnel office of his department. That office forwards the request to the State Personnel Department. The Personnel Department takes the names of persons from its register who are available for work in the geographical area and lists them, in order of their grade, on the certificate and sends the certificate back to the requesting department, together with the application forms of those who are on the certificate. The form includes the race of the applicant. The certificate then becomes a Certification of Eligibles. The personnel office of the requesting department may then indicate on the certificate the names of any persons recently employed elsewhere in the department, where such information is known, and then forward the certificate to the local appointing office.

Under the "rule of three" as applied in Alabama, the appointing officer may select and appoint persons from among

4. 45 C.F.R. 70.4 provides: "Prohibition of discrimination. Discrimination against any person in recruitment, examination, appointment, training promotion, retention or any other personnel action, because of political or religious opinions or affiliations or because of race, national origin or other nonmerit factors will be prohibited. The regulations will include appropriate provisions for appeals in cases of alleged discrimination."

those available; or, alternatively, he may choose to cancel the certificate if he does not wish to appoint any of the persons certified, or if the persons he wishes to hire are unavailable or decline the offer. It is the general practice for appointing officers to start at the top of the list and to call or write the person to see whether he is interested; if he is, arrangements are made for an interview. After the interview, the applicant's references are checked, and if they are favorable an offer is made. If the applicant indicates he is not interested or if he declines an offer, he is usually asked to so indicate in writing. If he accepts, the appointment is made.[5] After the vacancies are filled or the certificate exhausted, the certificate is returned to the Personnel Department with appropriate marks to indicate what action was taken for each person.[6] For temporary positions one or more persons, but not necessarily the highest ranking, are certified for each position, and frequently only persons requested by the appointing authority are certified. The "rule of three" is not followed.

## II-A

As of July 31, 1968, defendant Departments of Pensions and Security, Health, Mental Health, Education (Crippled Children's Services), Industrial Relations and Civil Defense employed the following full-time, permanent employees in the following classifications:

| | TOTAL | NEGRO |
|---|---|---|
| Clerical Positions (Clerk I and II, Clerk Typist I and II, Clerk Stenographer I and II; and Key Punch Operator I and II) | 988 | 1 |
| Semi-Professional, Professional, other Clerical, and Supervisory Positions | 2019 | 26 |
| Custodial, Laborer and Laboratory Helper Classifications | 70 | 67 |

5. The State of Alabama's code for race is: 1—white male; 2—white female; 3—Negro male; 4—Negro female; 5—male of race other than Caucasian or Negroid; 6—female of race other than Caucasian or Negroid.

Defendant Personnel Department employs 29 full-time employees, of whom approximately 20 hold clerical positions. All employees of defendant Personnel Department are white. Forty-nine Negro applicants (whose names and the positions for which they applied are attached hereto as Exhibit "A") for positions other than custodial, domestic, laborer and laboratory helper—applicants who had passed all examinations and had qualified for the positions which they sought—were repeatedly passed over for lower-ranking white persons in the selection process for appointments, offers, interviews, and other contacts, usually with the symbol "C" beside their names for "considered" but not selected. For a majority of the Negro applicants, the "passing over" was done without an interview or a telephone call. The experience of these applicants was that they applied for State employment and received no contacts, or received only one or two contacts from State officials, and no job offers, over a period of 18 months or more. A minority (five) of the Negro applicants listed were hired for permanent positions with the State, but were passed over for lower-ranking white applicants for contacts, offers and appointments before finally being hired. In all cases each Negro applicant listed in Exhibit "A" was passed over by officials of defendant departments for lower-ranking white persons for contacts, interviews, offers or appointments on one or more occasions; and most of the applicants so listed were passed over on numerous occasions. White applicants for the same positions with lower-ranking scores and no better qualifications than the Negro applicants who are listed in Exhibit "A" received numerous contacts, interviews and job offers, usually within a short period of time and frequently on the same day that their names appeared on defendant Personnel Depart-

6. "A" for appointed, "D" for declined, "FR" for failed to reply, "C" for considered but not appointed or offered a position, and "WA" for wrong address.

ment's register of eligibles. An examination of the applications submitted by the white applicants and the applications submitted by the Negro applicants reflects that the Negro applicants were as well or better qualified by training and experience as the white applicants who were preferred over them. For 48 of the 49 Negro applicants listed in Exhibit "A", there was no State record indicating any lack of qualification or unfitness. As to the one excepted applicant, there was simply a letter stating that she would "not fit in." All of the 49 Negro applicants listed in Exhibit "A" were qualified and fit for the positions for which they applied. The defendant officials have given no reasons pertaining to merit that would justify their passing over these applicants. This Court specifically finds that the defendants passed over the 49 Negro applicants listed in Exhibit "A", in favor of lower-ranking white applicants, solely because of their race or color.

The Personnel Department rarely certifies Negro applicants for temporary clerical positions for which they are eligible and available during the period of time their names are kept in the active file; and it frequently does not certify the names of Negro eligibles to permanent positions. This Court now finds that the Negro applicants listed in Exhibit "B" attached to this opinion were discriminated against by the defendants in the selection and appointment process solely on account of their race or color.

The evidence in this case further reflects that Negro eligibles are often placed on the inactive part of the employment register without ever receiving notice of such and are never certified again for vacant positions.

As of July 31, 1968, the defendants employed over 1,000 clerical personnel, *only one of whom was a Negro*—and this in the face of uncontroverted evidence that the defendants had an urgent and constant need for typists, stenographers, and case workers, and even though there were numerous qualified Negro applicants for such positions, including at least 60 Negro applicants listed on the registers for those jobs as of August, 1968. Specifically, those Negro applicants listed in the exhibits to this opinion were passed over by the defendants in favor of lower-ranking white applicants. The evidence is overwhelming that each of the defendants engaged in, and continues to engage in, a systematic pattern and practice of discrimination against qualified Negro applicants for clerical positions, by denying them appointments, offers, certifications and interviews, and by preferring lower-ranking white applicants.

### II-B

As of July 31, 1968, the Department of Pensions and Security and the Department of Industrial Relations had a total of 1,104 case workers, child welfare workers, employment interviewers and counselors and other semi-professional and professional full-time employees whose duties include contact with members of the public. Of that total, only 26 were Negroes. As was true in the case of the clerical employees, the defendant Department of Pensions and Security has had and continues to have many vacancies in such positions. With few exceptions, the Department of Pensions and Security and the Department of Industrial Relations assign Negro employees in these classifications to exclusively or predominantly Negro case loads and areas. Except in situations where a vacancy in such classification involves an exclusively or predominantly Negro case load or area, defendant Department of Pensions and Security has passed over qualified Negro applicants for such positions in favor of lower-ranking white applicants for appointments, offers, interviews and other contacts.[7]

---

7. The evidence in this case reflects that until 1966 some county Pensions and Security Departments, including Jefferson County, had a firm policy of refusing to hire Negroes in professional or semi-professional categories.

It follows therefore that the Alabama Department of Pensions and Security and the Department of Industrial Relations have engaged in selection and appointment practices based solely upon race or color, not upon merit.

## II-C

For several years prior to the institution of this case, the Department of Public Health maintained two related classifications, Laboratory Helper and Laboratory Assistant. The Laboratory Helper position had only one level, but the Laboratory Assistant position had two levels, with level I offering a prospect of advancement to Laboratory Assistant II. The educational requirement for Laboratory Assistant I was a high school education, preferably with laboratory science courses, while the requirement for Laboratory Helper was, first, a sixth- and then later a tenth-grade education.

As of July 31, 1968, there were 41 Laboratory Helpers (now referred to as Aides) employed by the Department of Public Health, all of whom were Negroes; the Laboratory Assistants were white. Of the 41 Negro Laboratory Helpers at that time, at least 24 were high school graduates, and many had taken laboratory science courses. At all times material in this case and prior to the filing of this lawsuit, the Laboratory Helper position has been an all-Negro position, filled only with Negroes, and the Laboratory Assistant classification has been a white position filled only with white employees. As of August, 1968, the defendants reorganized the classifications. Laboratory Helpers became Laboratory Aides I and II, and Laboratory Assistants I and II became Laboratory Technicians I, II and III. The Laboratory Aide I and II positions are now filled only with Negroes, while the Laboratory Technicians I, II and III positions are now filled only with white persons.

All of the skills required for performance of Laboratory Assistant positions were taught on the job; Laboratory Helpers were not taught these skills nor given an opportunity to learn them. The evidence reflects that the Personnel Officer of the Health Department had arbitrarily taken the position that Negro applicants were not qualified for positions other than Laboratory Helpers. An example of this practice is reflected in the case of employee Ruth Murphy, who has been employed by the Health Department for twenty-five years. She has a ninth-grade education, and has been a Laboratory Aide I for only a few months. For all the prior time she was a Laboratory Helper, although she has performed for more than ten years all the normal duties of Stockroom Clerk, and has performed these duties alone for most of that period. She has never taken the examination for Stockroom Clerk, and, in fact, she was not advised to take the examination, or told that the position was available to her, until approximately two weeks prior to the hearing in this case.[8] This means, of course, that the Alabama Health Department has maintained and continues to maintain a racial policy and practice of keeping the Laboratory Helper position as an all-Negro position and of placing all Negro employees of the Laboratory into only that position, or custodial positions, and of taking such action solely on the basis of race or color.

## III

The evidence further reflects that the defendant agencies have traditionally maintained facilities in their buildings on a racially segregated basis. The lunchroom and rest room facilities were maintained and operated on a segregated basis at least until December, 1968, well after the institution of this lawsuit.

The Administrative Building and the State Office Building in Montgomery,

8. The position of Stockroom Clerk is a higher paying position than that of Laboratory Helper.

Alabama, among other buildings, are owned by the Alabama Building Corporation, also known as the Alabama Building Authority, a public corporation comprised of State officials, including the Governor and the Attorney General.[9] The buildings were constructed with public funds and leased to defendant agencies. Under the lease the Corporation may enter into leases for concessions, including cafeterias or lunchrooms, and the Alabama State Employees Association operates the cafeterias in these buildings and the State Service Division, the rest rooms.

Negro persons are turned away from the cafeterias when they do not have an employee identification card, or unless they are accompanied by white persons; white persons are not required to show an identification card. Negro employees who work in cafeterias have been advised not to eat there, and they have not done so; the Negro employees who patronize the cafeterias buy their lunches at a window and eat in the hallways; white persons do not follow this practice. Upon their employment, the white employees of the defendant departments and other State agencies are issued cards by their supervisors. The cards identify them as members of the Alabama State Employees Association and are issued without the employees' requesting them. Negro employees have not been issued membership cards in the Alabama State Employees Association. No notice has been given to the Negro State employees that they are free to use the cafeterias; the contrary is reflected by the evidence.

The defendants have participated in the procedures by which the cafeterias in the buildings in which their employees work are operated on a racially discriminatory basis. The defendants have failed to take appropriate action to ensure that all their employees have access to such facilities without regard to race or color.

IV

The defendants have consistently discriminated in their recruitment practices. For example, the defendants administer State examinations for employment in 15 regular locations throughout the State of Alabama, of which 9 are at predominantly white high schools, 5 are at perdominantly white colleges, business schools, and the University of Alabama, and one at the Jefferson County Courthouse. Of more than 800 entries on the regular mailing list of the defendant Personnel Department only 18 were identifiably Negro institutions or persons. There are no mailings to newspapers or radio stations with predominantly Negro clientele. Furthermore, the defendants have not sought to hire graduates of predominantly Negro schools, such as Alabama State College, Wenonah State Technical Trade School, Wenonah State Junior College, and Booker T. Washington Business College. As a matter of fact, the evidence reflects that the defendants have had virtually no contact with these and other similar institutions. In contrast, the defendants have engaged in active recruiting at predominantly white institutions, including white high schools and colleges. The defendants' methods of advertising employment opportunities do not reach substantial portions of the Negro population of Alabama. The advertising and recruiting practices of the defendants tend to perpetuate the existing racial patterns of employment. These practices have resulted in discrimination against Negro citizens on the ground of their race or color.

V

Upon these findings, this Court now concludes that it has jurisdiction of this action, 28 U.S.C. § 1345, and that, as stated earlier, the United States has the authority to fix the terms and conditions upon which grants of federal assistance to states shall be disbursed.

The defendants' systematic refusal to appoint qualified Negro applicants and

9. Acts of Alabama, 1955, No. 205, p. 500; Acts of Alabama, 1951, No. 477, p. 844.

their appointment of and preference for lower-ranking white applicants constitute unlawful racial discrimination. United States v. Jefferson County Board of Education, *supra*. This is a clear violation of the equal protection clause of the Fourteenth Amendment. Likewise, the defendants' practice of passing over Negro applicants for lower-ranking white applicants constitutes unlawful racial discrimination in violation of the Constitution of the United States, and their policy of assigning Negro case workers and other semi-professional employees to work exclusively or predominantly with Negroes is violative of the Constitution of the United States. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. See also Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

The recruiting and advertising practices of the defendants are discriminatory and perpetuate the effects of past discrimination. They are likewise unlawful.

Under such circumstances as exist in this case, the courts have the authority and the duty not only to order an end to discriminatory practices but also to correct and eliminate the present effects of past discrimination. Local 53 of International Association of Heat and Frost Insulators and Asbestos Workers v. Vogler et al., 407 F.2d 1047 (5th Cir. 1969).

The defendants' practice of segregating employees by race in the use of facilities such as rest rooms, snack bars, and cafeterias, is a clear case of racial discrimination. It is unlawful. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

The racial discrimination in this case has so permeated the employment practices of the defendants that this Court finds it necessary to enter a detailed and specific decree which will not only prohibit discrimination but which will also prescribe procedures designed to prevent discrimination in the future and to correct the effects of past discrimination. A decree will be entered accordingly.

### DECREE

Pursuant to the findings of fact and conclusions of law made and entered in this case this date, it is the order, judgment and decree of this Court:

I. That the defendants, John S. Frazer, as Director, Alabama Personnel Department; Tom J. Ventress, as Chairman, State Personnel Board; James A. Simpson, as a Member, State Personnel Board; Ralph W. Adams, as a Member, State Personnel Board; Frank House, as Commissioner and Director, Alabama Department of Pensions and Security; Robert G. Kendall, Jr., as Director, Alabama Department of Industrial Relations; Ira L. Myers, as State Health Officer and Director, Alabama Department of Public Health; Ernest Stone, as Superintendent and Director, Alabama Department of Education; Stonewall B. Stickney, as State Mental Health Officer and Director, Alabama Department of Mental Health, and J. Frank Manderson, as Director, Alabama Department of Civil Defense, their agents, officers, successors in office, employees and all persons acting in concert or participation with them, be and they are hereby permanently enjoined from engaging in any employment practices, including recruitment, examination, appointment, training, promotion, retention, or any other personnel action, for the purpose or with the effect of discriminating against any employee, or actual or potential applicant for employment, on the ground of race or color.

II. It is further ordered that each of said defendants be and is hereby enjoined from failing to take the following action:

1. Each of the following named Negro applicants shall be offered the first available position with the defendants in the area of his geographical availability, in a classification and at a rate of pay which he would now have but for the racial discrimination found in the opinion and order of this Court made and entered this date:

| APPLICANT | JOB CLASSIFICATION | APPLICANT | JOB CLASSIFICATION |
|---|---|---|---|
| Crawford, Etta M. | Clerk Messenger | Crawford, Dorothy Thomas | Key Punch Operator I |
| Harris, Annie R. | Clerk Messenger | Williams, Francina L. | Employment Counselor I |
| Jarrett, Lee E. | Clerk Messenger | Baskin, Inez Jessie | Case Worker I |
| King, Doris M. | Clerk Messenger | Bass, Hazel Ruth | Case Worker I |
| Larkin, Annie L. | Clerk Messenger | Wilson, Catherine | Clerk Typist I |
| Lewis, Fred Douglas | Clerk Messenger | Bolton, Lizzie Charles | Case Worker I |
| Newsome, Kathryn | Clerk Messenger | Broughton, Rosie | Case Worker I |
| Parker, James M. | Clerk Messenger | Chambliss, Marguerite P. | Case Worker I |
| Roberson, Emma Jean | Clerk Messenger | Cooper, Carolyn A. | Case Worker I |
| Graham, Ophelia P. | Clerk I | Crenshaw, Willie David | Case Worker I |
| Gray, Omelia G. | Clerk I | Crews, Willie L. | Case Worker I |
| Green, Loretta W. | Clerk I | Davis, Charles | Case Worker I |
| Brown, Brenda Rand | Clerk Typist I | Holt, Evelyn McNeal | Case Worker I |
| Chaney, Josephine | Clerk Typist I | Hughes, Rosa Lee | Case Worker I |
| Curry, Martha Jean | Clerk Typist I | Jacobs, John L. | Case Worker I |
| Holman, Sadie Bell | Clerk Typist I | Kerr, Barbara Joyce | Case Worker I |
| Jones, Dorothy McKee | Clerk Typist I<br>Clerk Stenographer I | Lockett, William James | Case Worker I |
| | | Long, Carrie Olivia | Case Worker I |
| Mahone, Carolyn | Clerk Typist I | McCorvey, Gloria A. | Case Worker I |
| Mays, Marie | Clerk Typist I | McFarland, Dorothy L. | Case Worker I |
| Pasley, Angeline | Clerk Typist I | Maxwell, Verna J. | Case Worker I |
| Perkins, Delores A. | Clerk Typist I | Mitchell, Cecelia A. | Case Worker I |
| Richardson, Bernice | Clerk Typist I<br>Clerk Stenographer I | Pharris, Barbara Jean | Case Worker I |
| | | Lewis, McCurty Lois | Case Worker I |
| Williams, Clara Bell | Clerk Typist I | Martin, Evelyn R. | Clerk Typist I |
| Williams, Sharon Joan | Clerk Typist I | Rocker, Leola Davis | Case Worker I |
| Wilson, Janifer | Clerk Typist I | Powe, Gloria Hall | Case Worker I |
| Winn, Willie Beatrice | Clerk Typist I | Rhodes, Virgil J., Sr. | Case Worker I<br>Child Welfare Worker I<br>Employment Interviewer I<br>State Store Clerk |
| Gordon, Evelyn Louise | Clerk Typist I<br>Clerk Stenographer I | | |
| Jones, Jacqueline Warren | Clerk Stenographer I | Ross, Earnestine | Case Worker I |
| Miller, Lottie M. | Clerk I<br>Clerk Typist I<br>Clerk Stenographer I | Sanford, Barbara F. | Case Worker I |
| | | Solomon, Donald L. | Case Worker I |
| Sterling, Essie Mae | Clerk Typist I<br>Clerk Stenographer I | Taylor, Anne | Case Worker I |

[A 2586]

2. Negro applicants shall be appointed to positions other than custodial, domestic, laborer or laboratory aide, when said Negro applicants are listed on a Certification of Eligibles, unless higher-ranking white applicants on the certificate are appointed to fill the vacancy (or all the vacancies) in the listed position, or unless the defendants determine that the Negro applicant is not qualified to perform the duties of the position, or is otherwise not fit for the position.

3. Defendants shall not appoint or offer a position to a lower-ranking white applicant on a certificate in preference to a higher-ranking available Negro applicant, unless the defendants have first contacted and interviewed the higher-ranking Negro applicant and have determined that the Negro applicant cannot perform the functions of the position, is otherwise unfit for it, or is unavailable. In every instance where a determination is made that the Negro applicant is unfit or unavailable, documentary evidence shall be maintained by the defendants that will sustain that finding.

III. It is further ORDERED that:

1. A Certification of Eligibles for positions other than custodial, domestic, laborer or laboratory aide, containing the name of one or more Negro applicants, shall not be cancelled or returned with vacancies remaining unfilled unless each Negro applicant is appointed or is found to be unavailable or unqualified. Documentary evidence shall be maintained by the State Personnel Department that will sustain the finding of unavailability or lack of qualifications of the Negro applicants when they are not appointed. In every instance, a Negro applicant shall be advised, in writing, as to the fact that his name appears on a Certification of Eligibles and shall be advised as to the position, the agency, the location, his rank on the certificate, the number of persons certified, and the number of vacancies to be filled. When the appointing authority takes action on that certificate the Personnel Department shall notify the Negro applicant of the action taken.

2. The Personnel Department and each employee thereof for the State of Alabama be and each is hereby further enjoined from removing the name of a Negro applicant for a position other than custodial, domestic, laborer, or laboratory aide, from the active register of eligibles unless the Department, in writing, advises the Negro applicant that his name will be removed ten days from the date of the letter and gives him the reasons for the proposed removal.

IV. It is further ORDERED that each of the defendants be and is hereby enjoined from failing to certify Negro applicants whose rank and geographical availability entitle them to certification. If a Negro applicant is omitted from any certification, he shall have a right to the next available position in that classification in the geographical area, subject only to a finding of lack of qualification or fitness.

V. It is further ORDERED that:

1. The procedures to be followed by the defendants for making temporary appointments for positions (other than custodial, domestic, laborer, or laboratory aide) when there are Negro applicants on the employment register eligible for such positions shall be the same procedures as those for making permanent appointments.

2. Each of said defendants be and is hereby enjoined from all racially discriminatory treatment of Negro employees. The defendants shall make both oral and written announcements to all employees to the effect that they are free to use any facilities in the buildings in which they work, including rest rooms, eating facilities, and recreational facilities. Each Negro employee shall be so advised individually and personally by his immediate supervisor.

3. The defendants, in the buildings where cafeterias or snack bars are operated on a racially segregated basis shall devise a system of assignment or service which will eliminate such segregation.

4. The defendants shall issue membership cards in the Alabama State Employees Association to all of their present Negro employees, and shall continue to issue such cards to Negro employees so long as they issue them to white employees.

5. The defendants shall take appropriate steps to cause the Alabama State Employees Association to remove any signs reflecting that membership in the Alabama State Employees Association is required for patronage of the lunchrooms or cafeterias. The defendants shall also take appropriate action to cause the Alabama State Employees Association to admit and serve all persons equally without regard to race or color.

VI. It is further ORDERED that:

1. Each employee classified as a Laboratory Aide I or II as of the date of this order who has a high school education or the equivalent shall become a Laboratory Technician I or II without written or other examination as soon as vacancies occur in the Laboratory Technician I or II positions; no other person shall be hired, promoted or

demoted into the technician positions until all such Laboratory Aides II who qualify have become Laboratory Technicians II. Laboratory Aides II shall have preference over Laboratory Technicians I in the filling of vacancies in the Laboratory Technician II position.

2. Within six months of this decree, the racial identifiability of the positions of Laboratory Aide I and II and of Laboratory Technician I and II shall be completely removed.

VII. It is further ORDERED that:

1. The defendants shall assign employees on the basis of their training and ability, without regard to race. Negro employees in classifications requiring contact with the public shall not be assigned to serve exclusively or predominantly Negro clientele.

2. The defendants shall advise the public in all advertisements and announcements that they will appoint and employ persons on an equal opportunity, merit basis, without discrimination on the ground of race or color. In such public announcements, the defendants shall advise potential and actual applicants and employees of their right to be free from discrimination. Said announcements shall be made throughout the State of Alabama within thirty days from the date of this order.

3. The defendants shall adopt and implement a program of recruitment and advertising which will fully advise the Negro citizens of the State of Alabama of the employment opportunities available to them with the State of Alabama agencies. This program shall include a rearrangement of regular places for administering merit system examinations so that at least 25 percent of those places consist of predominantly Negro high schools or other institutions. The defendants shall also revise their permanent mailing list of the State Personnel Department to include all predominantly Negro educational institutions and vocational schools, and radio and television stations and newspapers; and for positions in which a high school education or less is required, the defendants shall be required to mail announcements of such positions, together with other related materials, to all the institutions indicated above, as well as to predominantly Negro high schools.

4. The defendants shall institute regular recruitment visits to predominantly Negro high schools, business and vocational schools, and colleges and universities throughout the State of Alabama, such visits to be made in person by appropriate officials of defendant agencies from both local and central offices. The defendants shall submit to this Court within thirty days from the date of this decree, their proposed program of recruitment and advertising.

It is further ORDERED that the defendants file, through their counsel, with this Court within thirty days from this decree a written report setting forth the composition of the State work force by race, location, job classification, department and rate of pay; the name, race, classification, department, division location, and pay rate of each person employed, promoted, resigned, retired, or fired or demoted during the reporting period; and the rank, grade, and race of the person appointed, as well as the rank, grade, and race of any of the higher-ranking competitors. This report shall include the institutions visited, job classifications for which the visits were made, dates of visits, visiting officer, name, title and position of the officer at each institution visited, the places at which examinations were given, and an account of the other advertising and recruiting methods followed by the defendants as required by this order.

It is further ordered that the defendants shall make their records available for inspection and copying by representatives of the United States during normal business hours upon reasonable notice.

This Court specifically retains jurisdiction of this cause.

It is further ordered that the costs incurred in this proceeding be and they are hereby taxed against the defendants, for which execution may issue.

1094

| NAME AND ADDRESS | JOB CATEGORY | DEFENDANT AGENCY |
|---|---|---|
| Baskin, Inez Jessie<br>3626 Mobile Highway<br>Montgomery, Alabama | Case Worker I | Pensions and Security<br>Personnel |
| Bass, Hazel Ruth<br>Box 735 Talladega College<br>Talladega, Alabama | Case Worker I | Pensions and Security |
| Bolton, Lizzie Charles<br>1718 Wilson Avenue<br>Daphne, Alabama | Case Worker I | Pensions and Security<br>Personnel |
| Broughton, Rosie | Case Worker I | Pensions and Security |
| Chambliss, Marguerite P.<br>405 Sixth Avenue<br>Birmingham, Alabama | Case Worker I | Pensions and Security<br>Personnel |
| Chaney, Josephine<br>262 Second Court<br>Mobile, Alabama | Clerk Typist I | Pensions and Security<br>Personnel |
| Cooper, Carolyn A.<br>1319 Walnut Street<br>Wilmington, Delaware | Case Worker I | Pensions and Security |
| Crenshaw, Willie David<br>5805 Syphax Drive<br>Falls Church, Virginia | Case Worker I | Pensions and Security<br>Personnel |
| Crews, Willie L. | Case Worker I | Pensions and Security |
| Curry, Martha Jean<br>1303 Juniper Street<br>Mobile, Alabama | Clerk Typist I | Pensions and Security<br>Personnel |
| Davis, Charles<br>737 1st St. S., Apt. B<br>Birmingham, Alabama | Case Worker I | Pensions and Security<br>Personnel |
| Gordon, Evelyn Louise<br>Route 2, Box 198<br>Ramer, Alabama | Clerk Typist I<br>Clerk Stenographer I | Education<br>Health<br>Personnel |
| Graham, Ophelia P. | Clerk I | Health |
| Gray, Omelia G. | Clerk I | Health |
| Green, Loretta W. | Clerk I | Health |
| Holmon, Sadie Bell<br>Route 1, Box 176<br>Tuscumbia, Alabama | Clerk Typist I | Personnel |
| Holt, Evelyn McNeal<br>1454 Barkley Drive<br>Mobile, Alabama | Case Worker I | Pensions and Security<br>Personnel |

[A3032]

EXHIBIT A- Cont'd

| NAME AND ADDRESS | JOB CATEGORY | DEFENDANT AGENCY |
|---|---|---|
| Hughes, Rosa Lee | Case Worker I | Pensions and Security<br>Personnel |
| Jacobs, John L. | Case Worker I | Pensions and Security |
| Jones, Dorothy McKee<br>1020 North Second Street<br>Birmingham, Alabama | Clerk Typist I<br>Clerk Stenographer I | Education<br>Industrial Relations<br>Pensions and Security<br>Personnel |
| Jones, Jacqueline Warren<br>3115 Caffey Drive<br>Montgomery, Alabama | Clerk Stenographer I | Education<br>Health<br>Pensions and Security<br>Personnel |
| Kerr, Barbara Joyce<br>200 Sacramento Drive<br>Hampton, Virginia | Case Worker I | Pensions and Security |
| Lewis, McCurty Lois | Case Worker I | Pensions and Security<br>Personnel |
| Lockett, William James<br>602 Shorter Avenue<br>Attalla, Alabama | Case Worker I | Pensions and Security |
| Long, Carrie Olivia | Case Worker I | Pensions and Security<br>Personnel |
| McCorvey, Gloria A.<br>128 Married Students Apts.<br>Tuskegee, Alabama | Case Worker I | Pensions and Security |
| McFarland, Dorothy L. | Case Worker I | Pensions and Security |
| Mahone, Carolyn<br>835 N. Union Circle<br>Montgomery, Alabama | Clerk Typist I | Education<br>Health<br>Pensions and Security<br>Personnel |
| Martin, Evelyn R.<br>890 N. Union Circle<br>Montgomery, Alabama | Clerk Typist I | Pensions and Security<br>Health |
| Maxwell, Verna J.<br>2258 Harry Court<br>Mobile, Alabama | Case Worker I | Pensions and Security |
| Miller, Lottie M. | Clerk I<br>Clerk Typist I<br>Clerk Stenographer I | Health<br>Education<br>Education<br>Pensions and Security<br>Industrial Relations |

[A3033]

## EXHIBIT A- Cont'd

| NAME AND ADDRESS | JOB CATEGORY | DEFENDANT AGENCY |
|---|---|---|
| Mitchell, Cecelia A.<br>289 Henderson St.,Apt. 15-R<br>Jersey City, New Jersey | Case Worker I | Pensions and Security |
| Pasley, Angeline<br>1645 East 74th Street<br>Chicago, Illinois | Clerk Typist I | Education<br>Pensions and Security<br>Personnel |
| Perkins, Delores A.<br>267 Morris Court<br>Pensacola, Florida | Clerk Typist I | Pensions and Security<br>Personnel |
| Pharris, Barbara Jean<br>1569 Huntsville Road<br>Birmingham, Alabama | Case Worker I | Pensions and Security<br>Personnel |
| Powe, Gloria Hall | Case Worker I | Pensions and Security |
| Rhodes, Virgil J., Sr.<br>2928 Persons Street<br>Whistler, Alabama | Case Worker I<br>Child Welfare Worker I<br>Employment Interviewer I<br>State Store Clerk | Pensions and Security<br>Personnel |
| Rocker, Leola Davis<br>518 Messer Street<br>Prichard, Alabama | Case Worker I | Pensions and Security<br>Personnel |
| Ross, Earnestine | Case Worker I | Pensions and Security<br>Personnel |
| Sanford, Barbara F.<br>3020 Love Avenue, N.W.<br>Huntsville, Alabama | Case Worker I | Pensions and Security |
| Solomon, Donald L.<br>Rt. 1, Box 408<br>Birmingham, Alabama | Case Worker I | Pensions and Security |
| Sterling, Essie Mae<br>1645 74th Street<br>Chicago, Illinois | Clerk Stenographer I<br>Clerk Typist I | Education<br>Health<br>Personnel<br>Pensions and Security |
| Taylor, Anne | Case Worker I | Pensions and Security |
| Crawford, Dorothy Thomas<br>837 Chilton Street<br>Montgomery, Alabama | Key Punch Operator I | Health |
| Williams, Clara Bell<br>903 Oak Street<br>Montgomery, Alabama | Clerk Typist I | Health<br>Pensions and Security<br>Personnel |
| Williams, Sharon Joan<br>1645 East 74th Street<br>Chicago, Illinois | Clerk Typist I | Education<br>Health<br>Pensions and Security<br>Personnel |

[A3034]

EXHIBIT A- Cont'd

| NAME AND ADDRESS | JOB CATEGORY | DEFENDANT AGENCY |
|---|---|---|
| Wilson, Catherine<br>3028 Short 19th Street<br>Tuscaloosa, Alabama | Clerk Typist I | Pensions and Security |
| Wilson, Janifer<br>1517 26th Avenue<br>Tuscaloosa, Alabama | Clerk Typist I | Health<br>Pensions and Security<br>Personnel |
| Winn, Willie Beatrice<br>2703 9th Avenue<br>Bessemer, Alabama | Clerk Typist I | Industrial Relations<br>Pensions and Security<br>Personnel |

EXHIBIT B

| NAME AND ADDRESS | JOB CATEGORY | DEFENDANT AGENCY |
|---|---|---|
| Brown, Brenda Rand<br>2120 Crawford Street<br>Mobile, Alabama | Clerk Typist I | Personnel |
| Crawford, Etta M.<br>512 Shepard<br>Montgomery, Alabama | Clerk Messenger | Personnel |
| Harris, Annie R.<br>247 Brassell Street<br>Montgomery, Alabama | Clerk Messenger | Personnel |
| Jarrett, Lee E. | Clerk Messenger | Personnel |
| King, Doris M.<br>Rt. 1, Box 41<br>Thomasville, Alabama | Clerk Messenger | Personnel |
| Larkin, Annie L. | Clerk Messenger | Personnel |
| Lewis, Fred Douglas<br>571 Watts Street<br>Montgomery, Alabama | Clerk Messenger | Personnel |
| Mays, Marie | Clerk Typist I | Personnel |
| Newsome, Kathryn<br>P. O. Box 160<br>Springville, Alabama | Clerk Messenger | Personnel |
| Parker, James M. | Clerk Messenger | Personnel |
| Richardson, Bernice | Clerk Typist I<br>Clerk Stenographer I | Personnel |
| Roberson, Emma Jean | Clerk Messenger | Personnel |
| Williams, Francina L. | Employment Counselor I | Personnel |