Johnny REYNOLDS, et al., Plaintiffs,

v.

**ALABAMA DEPARTMENT OF TRANSPORTATION, et al.,**
Defendants.

**United States of America Plaintiff,**

v.

**Thomas Flowers, et al., Defendants,**

**Alabama State Conference of NAACP Branches, Amicus Curiae.**

No. CIV.A. 85–T–665–N, CIV.A. 2709–N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 14, 2000.

Robert L. Wiggins, Jr., Ann K. Wiggins, Russell W. Adams, Abigail P. van Alstyne, Kimberly C. Page, Scott Gilliland and Kell A. Simon, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Johnny Reynolds, plaintiff, and Cecil Parker, Frank Reed, Ouida Maxwell, Martha Ann Boleware, Florence Belser, Peggy Vonsherie Allen and Jeffrey W. Brown, Intervenor–Plaintiffs in Civ.A. No. 84–T–665–N.

Claudia H. Pearson, Nakamura & Quinn, Birmingham, AL, for Robert Johnson, Intervenor–Plaintiff in Civ.A.No. 85–T–665–N.

Raymond P. Fitzpatrick, Cooper & Clark, Birmingham, AL, for William Adams, Cheryl Caine, Tim Colquitt, William Flowers, Wilson Folmar, George Kyser, Becky Pollard, Ronnie Pouncey, Terry Robinson, Tim Williams, Intervenors in Civ.A.No. 85–T–665–N.

Raymond P. Fitzpatrick, Jr., R. Scott Clark, J. Michael Cooper, Fitzpatrick, Cooper & Clark, Birmingham, AL, for Michael Grant, John D'Arville and Andrew McCullough, Intervenors in Civ.A.No. 85–T–665–N.

Thomas R. Elliot, Jr., Allen R. Trippeer, Jr., Lisa W. Borden, C. Dennis Hughes, London & Yancey, Birmingham, AL and William H. Pryor, Jr., Attorney General for the State of Alabama, Montgomery, AL, for Alabama Department of Transportation, Alabama State Personnel Department, Jimmy Butts, in his official capacity as Director for the Alabama Department of Transportation, Halycon Vance Ballard, in her official capacity as Director of the Alabama State Personnel Department and Fob James, in his official capacity as Governor of the State of Alabama, Defendants in Civ.A.No. 85–T–665–N.

William P. Gray, Jr., Gray & Jauregui, Montgomery, AL, for Fob James, in his official capacity as Governor of the State of Alabama, Defendant in Civ.A.No. 85–T–665–N.

Elaine R. Jones, Norman J. Chachkin, NAACP Legal Defense Fund, New York City, for NAACP Legal Defense and Educational Fund, Inc., Amicus in Civ.A.No. 85–T–665–N.

Barbara R. Arnwine, Thomas J. Henderson, Richard T. Seymour, Teresa A. Ferrante, Lawyers' Committee for Civil Rights Under Law, Washington, DC, for The Lawyers' Committee for Civil Rights under Law, Amicus in Civ.A.No. 85–T–665–N.

Mary Beth Martin, San Diego, CA, Sharon A. Seeley, Chicago, IL, Civil Rights Division, Employment Litigation Section, United States Department of Justice for the United States in Civ.A.No. 2709–N.

Lisa W. Borden, Wesley Redmond, Laura Proctor, Wesley Redmond, Jacquelyn Smith, Berkowitz, Lefkovits, Isom & Kushner, Birmingham, AL, Andrew Campbell, Eric Hoaglund, David Loper, Jonathan Walker, Campbell, Walker & McCallum, Birmingham, AL and William H. Pryor, Jr., Attorney General for the State of Alabama, Montgomery, AL, for Thomas G. Flowers, in his official capacity as Director of the Alabama State Personnel Department in Civ.A.No. 2709–N.

## ORDER

MYRON H. THOMPSON, District Judge.

These two lawsuits, *Reynolds v. Alabama Dep't of Transp.*, civil action no. 85–T–665–N, and *United States v. Flowers*, civil action no. 2709–N (previously styled *United States v. Frazer*, but still commonly known today as '*Frazer*' or the '*Frazer* litigation'), are again before the court on the issue of the reach of *Frazer*'s 'no-bypass rule.' The specific questions, presented in the Adams intervenors' renewed motion for modification or clarification, filed June 29, 1998,[1] and amended on August 17, 1998,[2] are (1) whether the rule applies to circumstances in which an African–American applicant is ranked higher than a white applicant on a certificate of eligibles due to random ranking of applicants, and (2), if so, whether such application is constitutional. The Adams intervenors maintain that the answer to question one is no and that the conditional answer to question two is no.

## I.

Paragraph 3 of § II of the 1970 injunction in *Frazer* provides as follows:

---

**1.** Doc. no. 2902.

**2.** Doc. no. 2107.

"Defendants shall not appoint or offer a position to a lower-ranking white applicant on a certificate in preference to a higher-ranking available Negro applicant, unless the defendants have first contacted and interviewed the higher-ranking Negro applicant and have determined that the Negro applicant cannot perform the functions of the position, is otherwise unfit for it, or is unavailable. In every instance where a determination is made that the Negro applicant is unfit or unavailable, documentary evidence shall be maintained by the defendants that will sustain that finding."

*United States v. Frazer,* 317 F.Supp. 1079, 1091 (M.D.Ala.1970). This provision, which embodies what is now called the no-bypass rule, prohibits the Alabama Department of Transportation from bypassing a higher-ranked African–American applicant in favor of a lower-ranked white applicant on a certificate of eligibles. The rule was imposed in response to evidence that the State of Alabama was unabashedly refusing to hire and promote African Americans to non-menial positions in state government because of their race.

Article VII, ¶ 5 of consent decree I in *Reynolds* provides as follows:

"TIED SCORES: Where black eligibles and white eligibles would appear on the same Certificate of Eligibles with tied scores, Personnel will continue to certify all such eligibles but will use a procedure to be developed by it to break the tie."

*Reynolds v. Alabama Dep't of Transp.,* 1994 WL 899259, *13 (M.D.Ala. Mar. 16, 1994).

Since entry of consent decree I in 1994, defendant Alabama State Personnel Department has implemented a practice of banding test scores for some positions, that is, grouping scores together in bands selected to encompass scores which are statistically insignificantly different, i.e., the scores are statistically tied. Absent some method of breaking ties, a certificate of eligibles for a position that includes banded scores would contain all applicants without in any way ranking those within the same band.

Pursuant to ¶ 5 of Article VII, the Personnel Department developed a procedure for breaking ties by computerized randomization. The department certified all applicants within a band or with tied scores to the Transportation Department in rank order based on the applicants' random rankings assigned by computer. The Personnel Department has applied the *Frazer* no-bypass rule to applicants who have been randomly ranked in this way.

By order entered on April 24, 1998,[3] the court held that the no-bypass rule does not apply to tied and banded scores. *Reynolds v. Alabama Dept. of Transp.,* 1998 WL 1748544 (M.D.Ala. April 24, 1998). With their renewed and amended motion for clarification or modification, the Adams intervenors now ask that the court answer additional questions left unanswered in the 1998 order: (1) whether the rule applies to circumstances in which a black applicant is ranked higher than a white applicant due to random ranking of applicants, and (2), if so, whether the application is constitutional.

II.

To the extent that the Adams intervenors are requesting that the court interpret the reach of the 1970 *Frazer* injunction, they lack standing to make the request. The Adams intervenors (who are, for the most part, white employees of the transportation department) were allowed to intervene in the *Reynolds* liti-

3. Doc. no. 2609.

gation only to the extent that they could object to race-conscience relief in that litigation. *Reynolds v. Roberts,* 846 F.Supp. 948 (M.D.Ala.1994). The Adams intervenors were not allowed to intervene to challenge orders in the *Frazer* litigation. Nevertheless, because all parties to the *Frazer* litigation—plaintiff United States and defendant officials of the State of Alabama—have now addressed the issue and, by implication, have requested its resolution, the court will now do so. For two reasons, it finds that the 1970 *Frazer* injunction does not authorize or require application of the no-bypass rule to random ranking of applicants.

First, the 1970 *Frazer* injunction "simply do[es] not address equally-ranked applicants." *Reynolds v. Alabama Department of Transportation,* 1998 WL 1748544 at *3 (M.D.Ala. April 24, 1998).[4] Neither the issue of random ranking nor any method of breaking ties between otherwise equally-ranked applicants was addressed in the injunction; nor did any provision of the injunction or findings of fact entered by the court in support of the injunction address tied ranking. The issue of equally-ranked applicants was simply was not raised in the litigation.

To be sure, it could be argued that, because the 1970 injunction does not explicitly limit the no-bypass rule's application to eligibles who are higher ranked based on any particular ranking method, the rule applies regardless of the method used to rank eligibles. However, the court

does not believe that such an interpretation was intended in the 1970 injunction. The no-bypass rule was intended to prevent the selection of white applicants when there was a black applicant on the eligibility list who appeared to be the better choice. Nothing in the language or structure of the injunction indicates that the court contemplated that rankings on an eligibility list would be wholly divorced from some assessment of the applicants' qualifications or suitability of the position for which they were certified.[5]

The findings of fact reached in the support of the 1970 injunction support the conclusion that the no-bypass rule does not apply to random ranking of applicants. For example, the court stated:

"Under the Alabama statutes and regulations governing personnel practices, a person seeking State employment generally is required to take an examination; upon passing the examination, the person's name is placed on register for that position.... Under the Alabama statutes and regulations, when permanent positions become available, applicants who have passed the examination are certified to the employing agency by the Personnel Department in accordance with their geographical availability and in the order of their rank on the employment registers which were established after the giving of the examinations. Rank is determined by the grade on the examination, plus points from veterans' preference."

---

4. Doc. no. 2609.

5. The fact that, as the *Reynolds* plaintiffs point out, veterans' preference points and service ratings may have been added to raw test scores in arriving at rankings appearing on a certificate of eligibles does not undermine this conclusion. As these plaintiffs state, "the scores appearing on a certificate of eligibles [may be] the composite of a set of *other values*

that the state legislature has chosen to include in the scores." *See* Plaintiff's Resp. to Adams Intervenors' Renewed Mot. for Modification and/or Clarification at 10 n. 7 (Doc. no. 2960). The rankings are, nonetheless, an objective measure based on a set of facially race-neutral values, preferences, and judgments regarding the merit or suitability of applicants.

*Frazer*, 317 F.Supp. at 1085. These findings indicate that the court viewed the bypassing of higher-ranked black applicants as strong evidence of unlawful discrimination because the applicants' scores were presumed to reflect to some degree their relative merit of qualifications, so that a black applicant who ranked higher than the white applicant selected was presumptively more suitable for the position than the individual selected. Thus, the no-bypass rule in the 1970 injunction was intended to apply in circumstances in which applicants' rankings on an eligible list are related in some measure to their qualification or suitability for the position sought.

Second, it cannot be overlooked that all parties to the *Frazer* litigation agree with this understanding of the reach of the no-bypass rule. Some weight must be given to this fact as well.

### III.

To the extent the Adams intervenors contend that ¶ 5 of Article VII of consent decree I in *Reynolds* does not authorize or require the application of the no-bypass rule to random ranking of applicants and that, if it did, it would be unconstitutional race-conscience relief, they have standing.

The *Reynolds* plaintiffs assert that one of the basic purposes served by ¶ 5 of Article VII was "to end the practice of avoiding the *Frazer* no-bypass rule by manipulating examination scores to proliferate ties on certificates of eligibles that are not subject to such rule." Plaintiff's Resp. to Adams Intervenors' Renewed Mot. for Modification and/or Clarification at 3 [hereafter Plaintiff's Resp.].[6] They maintain that "the only possible purpose of Article VII, ¶ 5 was to break ties so that the *Frazer* no-bypass rule would apply." *Id.* at 17. "Without the *Frazer* no-bypass rule," according to the *Reynolds* plaintiffs,

"breaking ties would be an idle and meaningless thing to do." *Id.* Because Article III, ¶ 8 of the consent decree I provides that "this Decree ... will not modify or affect any obligation of the parties bound by this Decree which arises under ... the remedies and requirements set forth in *Ballard/Frazer*," *Reynolds*, 1994 WL 899259 at *9, Plaintiff's continue that Article XIX, ¶ 1 provides that "Defendants remain bound by the injunctive and declaratory relief entered in *U.S. v. Frazer*," Plaintiff's Resp. at 18, and that Article XIX, ¶ 6(c) provides that "the provisions of this Decree ... have been premised on the prior remedies rendered in the *Frazer/Ballard*." *Id.* The *Reynolds* plaintiffs thus conclude that ¶ 5 of Article VII must be interpreted as requiring or authorizing the application of the no-bypass rule to rankings based on randomization.

However, because there is simply no language in consent decree I that addresses random ranking of applicants, this argument by the *Reynolds* plaintiffs is essentially foreclosed by recent opinions of the Eleventh Circuit Court of Appeals in this case. In the absence of express language, according to the Eleventh Circuit, this district court "ha[s] no basis in law for rewriting the contract," that is, the consent decree. *Reynolds v. Roberts*, 207 F.3d 1288, 1301 (11th Cir.2000). "Longstanding precedent evidences a strong public policy against judicial re-writing of consent decrees. '[A] district court may not impose obligations on a party that are not unambiguously mandated by the decree itself.' *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2nd Cir.1995)." *Reynolds v. Roberts*, 202 F.3d 1303, 1312 (11th Cir.2000). "Consent decrees are contracts, and we can construe them using the normal tools for interpreting contracts.... Where they are unambiguous, the court must uphold

---

6. Doc. no. 2960.

the decree as written." *Reynolds v. Roberts*, 207 F.3d at 1300 (citation omitted). Moreover, it is difficult to imagine how *Reynolds*, which, as the plaintiffs admit, reaffirms *Frazer*, could require or authorize application of *Frazer*'s no-bypass rule if *Frazer* itself does not itself require or authorize it.

The conclusion that the no-bypass rule does not apply to randomized scores under either in the 1970 *Frazer* injunction or consent decree I does not necessarily mean that there is no remedy. Language from the April 24, 1998, order of this court applies, with some modification, here as well:

> "To the extent ... evidence ... establishes that the defendants have *intentionally* discriminated against blacks in selecting from among ... black and white applicants [within a band or with tied scores], the defendants have violated the later injunction entered in *Frazer* on August 20, 1976, which prohibits the defendants from 'engaging in any employment practice ... which has the *purpose* or the *effect* of discriminating against any employee or actual or potential applicant for employment on the basis of race.' *United States v. Frazer*, 1976 WL 729 (M.D.Ala. Aug. 20, 1976), at *6 (emphasis added). By the same token, to the extent ... evidence establishes that the defendants' practices in selecting from among ... black and white applicants [within a band or with tied scores] have had the *effect* of discriminating against blacks, that too would violate the 1976 injunction."

*Reynolds*, 1998 WL 1748544 at *4.

Accordingly, it is ORDERED that the Adams intervenors' renewed motion for modification or clarification, filed June 29, 1998 (Doc. no. 2902), and amended on August 17, 1998 (Doc. no. 3107), is granted to the extent that neither the express language in the *Frazer* injunctions nor that in consent decree I requires or authorizes application of the no-bypass rule to circumstances in which an African–American applicant is ranked higher than a white applicant on a certificate of eligibles due to random ranking of applicants.