**NAACP, Plaintiff,**

**Phillip Paradise, Jr., Individually and on behalf of the class similarly situated, Intervening Plaintiff,**

**United States of America, Plaintiff and Amicus Curiae,**

v.

**E. C. DOTHARD, as Director of the Alabama Department of Public Safety, his agents, assigns, and successors in office; et al., Defendants.**

**Civ. A. No. 3561–N.**

United States District Court, M. D. Alabama, N. D.

Jan. 5, 1974.

Morris Dees, Jr., Joseph J. Levin, Jr., and Charles F. Abernathy, Montgomery, Ala., for plaintiff and intervening plaintiff.

Ira DeMent, U. S. Atty., and Kenneth E. Vines, Asst. U. S. Atty., M. D. Ala., Montgomery, Ala., and Douglas Huron, Civil Rights Div.; Dept. of Justice, Washington, D. C., for the United States.

William J. Baxley, Atty. Gen., and E. Ray Acton and Gordon Madison, Asst. Attys., Gen., Montgomery, Ala., for defendants.

ORDER

JOHNSON, Chief Judge.

This action was originally brought by the National Association for the Advancement of Colored People on behalf of its members and all similarly situated Negroes in the State of Alabama. The complaint alleged that defendant Allen, as Director of the Alabama Department of Public Safety,[1] and defendant Frazer,

---

1. Eldred C. Dothard, successor in office to the defendant Allen, has pursuant to Rule 25 (d), Federal Rules of Civil Procedure, been substituted as a defendant.

as Personnel Director of the Alabama Personnel Department, have followed the continuous and pervasive pattern and practice of excluding Negroes from employment in the Alabama Department of Public Safety. On February 10, 1972, this Court filed its Findings of Fact and Conclusions of Law, setting them forth in a Memorandum Opinion entered that date, 340 F.Supp. 703, which found that defendants had engaged in a continuous pattern and practice of discrimination in hiring in the Alabama Department of Public Safety, both as to troopers and supporting personnel. In an effort to remedy the continuing effects of this discrimination and in an effort to eliminate the effects of past discriminatory practices, the Court ordered defendants to fill fifty (50) percent of future vacancies in trooper and support positions with qualified blacks until such time as the jobs were filled by blacks in a ratio of approximately twenty-five (25) percent.[2]

The defendants filed a timely notice of appeal from this Court's order and also moved for a stay pending the outcome of the appeal. On March 16, 1972, this Court denied a stay pending appeal.

On November 12, 1973, the panel of the Court of Appeals for the Fifth Circuit, to which this case has been assigned, entered an order providing that

. . . the record in this cause should now be supplemented and the district court should be accorded the opportunity to reconsider its decree in the light of current information.

The panel directed the parties to prepare and file a stipulation reflecting certain data and also directed this Court to

. . . reconsider any portion of its decree as the same would now apply to future employment practices. The district court shall augment the record on file in this court with copies of the required stipulation and with appropriate evidence of the [district]

court's action or decision to allow present decree to remain unaltered.

To implement the order of the Fifth Circuit's panel, this Court ordered the parties to submit the stipulation required by the Fifth Circuit panel within ten days. The parties were also given thirty days to "elicit evidence relevant to this Court's reconsideration of its decree of February 10, 1972, as the same applies to future employment practices by the defendants." [3]

The stipulation as required by the Court of Appeals' panel has now been filed with this Court. Furthermore, the plaintiffs have submitted interrogatories to the defendants; these interrogatories have been answered. Certain past and present officials of the Departments of Public Safety and Personnel for the State of Alabama have been deposed. These depositions and several affidavits from former state troopers have been filed. On the basis of some of this evidence, the private plaintiffs have filed a request to this Court for an order to show cause why the Governor of the State of Alabama should not be held in criminal contempt of this Court's order entered February 10, 1972. The United States has also filed a motion with this Court to supplement the record in this case with the evidence filed on July 19, 1973, in the companion case of United States v. Frazer, Civil Action No. 2709–N.

Now, upon this submission, this Court in this memorandum makes appropriate findings and conclusions in order to comply with the order of the panel of the Court of Appeals for the Fifth Circuit entered in this case on November 12, 1973.

On February 10, 1972, the date this Court's order and injunction was entered in this case, the State of Alabama employed no black state troopers. Since the entry of this order, the state has hired forty-nine (49) troopers, of whom

---

2. The black population in Alabama in 1970 was 26.2 percent of the total.

3. These time limitations were later upon appropriate motions and for good reasons extended.

twenty-five (25) have been black. Sixteen (16) of the black troopers are still working for the Department of Public Safety. The progress in the area of support personnel has been even more significant. Today there are some eighty (80) blacks working in support positions in the Alabama Department of Public Safety where before this Court entered its order February 10, 1972, there were none. This Court considers it appropriate in this case to compare the progress achieved thus far in this case under the February 10, 1972, order with the limited success of the decree entered in United States v. Frazer, 317 F.Supp. 1079 (M.D.Ala.1970). So that the panel of the Fifth Circuit may also be able to compare the progress in this case with the lack of progress in *Frazer*, the motion of the United States to supplement the record herein with the evidence filed on July 19, 1973, in the *Frazer* case will be granted. Like *Allen*, *Frazer* represented an attack on the discriminatory employment practices of State of Alabama agencies. In both cases the agencies in question hired most of their employees through the Alabama Personnel Department, and the head of Personnel, Frazer, is a defendant in both cases.

*Frazer* initially involved seven Alabama agencies. This Court entered a decree in that case on July 28, 1970, some eighteen months before the decree was entered in the *Allen* case. Since the Department of Personnel was one of the defendants in *Frazer* and Personnel supplies employees to all state agencies, the provisions of the *Frazer* order were applied across the board to all Alabama agencies. On February 14, 1973, this Court formalized this arrangement by granting the Government's motion to add all state agencies except Public Safety as defendants in *Frazer*.

The *Frazer* decree has a much wider scope than the *Allen* order, which focuses on only one agency—the Alabama Department of Public Safety—but the decree in *Frazer* lacks the precision achieved in *Allen* through the use of hiring goals.[4] The contrast in results achieved to this point in the *Allen* case and the *Frazer* case under the two orders entered in those cases is striking indeed. Even though the agencies affected by the *Frazer* order and the Department of Public Safety draw upon the same pool of black applicants—that is, those who have been processed through the Department of Personnel— *Allen* has seen substantial black hiring, while the progress under *Frazer* has been slow and, in many instances, nonexistent. This lack of progress is documented in the tables that were furnished this Court by the United States as a part of its brief. The data set forth on the tables was extracted from reports filed with the Court in *Frazer*. Copies of some of these tables are appended to and by reference made a part of these findings.[5] The pattern which emerges from a study of these tables is clear. While the level of increase in nonmenial black employment is nowhere high, it is lowest in those agencies and job classifications from which blacks have historically been completely or almost completely excluded prior to July 28, 1970. In the past no Alabama agency was more exclusionary than the Alabama Department of Public Safety. On July 28, 1970, the Alabama Department of Public Safety was all white. For eighteen months it, like other Alabama agencies, was affected by the *Frazer* order, but it was still all white as of February 10, 1972. On that date, however, the Alabama Department of Public Safety was removed from the *Frazer* case and an order containing hiring goals was entered against

---

4. An amendment to *Frazer* added a goal for the hiring of temporary employees but there has never been a goal for permanent employees of the state. The statistical reports filed with the Court in *Frazer* reflect that the hiring of black temporary employees has been very successful.

5. The significant increase in employment of blacks by the Alabama Department of Mental Health—35.5 percent—can be attributed to the decrees entered by this Court in Wyatt v. Stickney, Civil Action No. 3195-N.

that department. Today the Alabama Department of Public Safety has nearly one hundred (100) blacks employed in nonmenial jobs in both trooper and support positions. With its eighty (80) black support personnel, the Alabama Department of Public Safety has nearly as many black clerical employees as all seventy-five (75) other Alabama state agencies combined!

Thus in a racial discrimination in employment type case, when the parties are entitled to relief by reason of the fact that their constitutional rights have been violated, this Court's experience reflects that the decrees that are entered must contain hiring goals; otherwise effective relief will not be achieved.

The State of Alabama contends that the burden imposed by this Court's decree in this case is too onerous because it is difficult to locate blacks who are both qualified and interested in working for the Alabama Department of Public Safety. The evidence refutes this contention. Since the decree was entered in this case in February, 1972, approximately 325 blacks have taken and passed the examination for state trooper and have been placed on the employment register for that position. The Public Safety Department has hired twenty-five (25) of these blacks, has considered and rejected approximately fifty (50) of them, and is now in the process of doing background investigations on another twenty-five (25) to forty (40). There are some 200 to 225 blacks who have passed the written examination and who have not yet been considered for employment as state troopers. This large reservoir of black applicants has been created without significant affirmative recruiting by the state. The evidence reflects that even more blacks will be attracted by a good recruitment program. Similarly, there has been no problem in finding qualified blacks to serve in sup-

port positions, as is evidenced both by the large number of blacks already hired into these jobs and by the testimony that has been submitted in connection with this interim procedure.

Elimination of the effects of prior discrimination on the basis of race is a critical requirement in any decree. Louisiana v. United States, 380 U.S. 145, 154, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965). While there has been substantial progress under the present order in this case and the Alabama Department of Public Safety is no longer a "white-only" organization, much remains to be done in order to accord plaintiffs the relief to which they are entitled. Neither the troopers nor the support personnel are yet twenty-five (25) percent black, and although the support personnel are approaching that goal, there are presently only sixteen (16) black troopers. Certain refinements in the decree are needed to insure that the effects of discrimination will, within a reasonable time, be eliminated in the Alabama trooper force. This Court will, however, pending disposition of this case by the United States Court of Appeals for the Fifth Circuit, reserve making any refinements in the decree. However, the issue of black attrition in the trooper force needs to be dealt with in a positive manner at some appropriate future date.

More serious than the attrition problem[6] is the level of trooper hirings since the entry of this Court's decree in February, 1972. Walter Allen, who was at that time the Director of the Alabama Department of Public Safety, testified on February 7, 1972, that he critically needed more troopers. Colonel Dothard, the present director who has now been substituted as a defendant for Allen, has testified on deposition that he now needs more troopers. Despite this need, the State of Alabama has suffered a net reduction of thirty-two (32) uni-

6. Nine (9) of the twenty-five (25) black troopers that have been hired have been terminated for various reasons. There are some strong inferences presented by the evidence that this has resulted from discriminatory practices.

formed troopers since February, 1972. Only forty-nine (49) troopers have been hired since the order was entered despite the fact that immediately after the entry of the decree in February, 1972, funds were available to hire approximately one hundred ten (110) additional troopers. Based on hiring patterns in prior years, it appears that at least fifty (50) additional troopers would also have been employed, giving a total of approximately one hundred fifty (150) to one hundred sixty (160) of whom seventy-five (75) to eighty (80) would have been black. The State of Alabama, however, has declined to hire a substantial number of troopers since the entry of this Court's order in February, 1972. There is only one explanation for this inaction: the responsible State of Alabama officials have virtually frozen the hiring of state troopers pending the outcome of this case on appeal.[7] Again this Court will reserve, pending disposition of this case on appeal, ruling upon the motions that are now presented asking that the State of Alabama, and its officers and agents, be enjoined from interference with the February 10, 1972, order of this Court and be enjoined from holding employment in the trooper force at an artificially low level.

In conclusion, it appears that substantial progress has been made in this case toward eliminating the effects of discrimination by the Alabama Department of Public Safety, but more remains to be done. The decree of this Court made and entered in this case February 10, 1972, should not be weakened in any way. This Court declines to do so. As a matter of fact, certain refinements will be appropriate if and when the case is remanded to this Court by the appellate court for further implementation. Specifically responding to the November 12, 1973, order of the Fifth Circuit panel, this Court has reconsidered its decree of February 10, 1972, made and entered in this case as the same applies to future employment practices by the Alabama Department of Public Safety. It is the decision of this Court to allow the decree to remain unaltered for the time being.

Accordingly, it is the order, judgment and decree of this Court that ruling be and is hereby reserved on the motions of the plaintiffs and the Government as made and filed in this case with the Clerk of this Court since the November 12, 1973, order entered by the panel of the Court of Appeals for the Fifth Circuit to which this case has been assigned.

It is further ordered that:

1. The record of this case be and is hereby supplemented to include:

(a) All evidence received by this Court in the case of United States v. Frazer, Civil Action No. 2709-N,

(b) The interrogatories and answers thereto filed in this case since November 12, 1973,

(c) The depositions taken and filed in this case since November 12, 1973,

(d) The stipulations of the parties filed in this case since November 12, 1973, and

(e) A copy of this order.

2. The attorneys for the United States file with the Clerk of the United States Court of Appeals for the Fifth Circuit, within seven days from the date of this order, all evidence received by this Court in the case of United States v. Frazer, Civil Action No. 2709-N.

3. The Clerk of this Court forthwith forward all other supplemental materials hereinabove identified to the Clerk of the United States Court of Appeals for the Fifth Circuit so that he may, in turn, make them available to the panel of Judges for the Fifth Circuit that entered the November 12, 1973, order.

---

7. In this connection see the testimony of former Director Allen as set out in his deposition taken on December 7, 1973.

## APPENDIX

### TABLE 1

## NEW DEFENDANT DEPARTMENTS
## COMPARISON BY RACE OF CLASSIFIED EMPLOYEES
### As of August 4, 1970 and March 31, 1973 [1]

| Department | Total | As of August 4, 1970 White | Negro | % Negro | Total | As of March 31, 1973 White | Negro | Other | % Negro |
|---|---|---|---|---|---|---|---|---|---|
| Highways | 5106 [2] | 5015 | 72 | 1.4% | 4737 | 4652 | 84 | 1 | 1.8% |
| *ABC Board | 1044 | 943 | 101 | 9.6% | 1116 | 1015 | 100 | 1 | 9.0% |
| Revenue | 673 | 671 | 2 | 0.3% | 762 | 737 | 25 | | 3.3% |
| Corrections | 608 | 608 | 0 | 0.0% | 662 | 644 | 18 | | 2.7% |
| *Conservation | 370 | 366 | 4 | 1.0% | 463 | 460 | 3 | | 0.6% |
| Forestry | 338 | 338 | 0 | 0.0% | 376 | 372 | 4 | | 1.1% |
| Agriculture | 370 | 366 | 4 | 1.0% | 365 | 356 | 9 | | 2.5% |
| Docks | 191 | 191 | 0 | 0.0% | 193 | 190 | 3 | | 1.6% |
| Finance | 155 | 154 | 1 | 0.6% | 160 | 158 | 2 | | 1.3% |
| Pardon and Parole Board | 138 | 138 | 0 | 0.0% | 145 | 143 | 2 | | 1.4% |
| Military | 108 | 97 | 11 | 10.1% | 107 | 95 | 12 | | 11.2% |
| *Examiners of Public Accounts | 97 | 97 | 0 | 0.0% | 105 | 105 | 0 | | 0.0% |
| *Alabama Development Office | 65 | 65 | 0 | 0.0% | 78 | 78 | 0 | | 0.0% |
| All Other Added Departments [3] | 461 | 455 | 6 | 1.3% | 755 | 736 | 19 | — | 2.5% |
| Total All Added Departments | 9895 | 9671 | 205 | 2.1% | 10024 | 9741 | 281 | 2 | 2.8% |

* Departments showing no increase or a decrease of black participation.
1. Information obtained from Plaintiff Exhibit 3 and Defendant Report to Court of August 1970.
2. Nineteen persons in the Highway Department have no race identification in 1970.
3. Includes 51 departments with less than 75 employees.

### TABLE 2

## ORIGINAL DEFENDANT DEPARTMENTS
## COMPARISON BY RACE OF CLASSIFIED EMPLOYEES
### As of August 4, 1970 and March 31, 1973 [1]

| Department | Total | As of August 4, 1970 White | Negro | % Negro | Total | As of March 31, 1973 White | Negro | Other | % Negro |
|---|---|---|---|---|---|---|---|---|---|
| MHD Mental Health | 2861 | 2250 | 611 | 21.4% | 4066 | 2622 | 1444 | | 35.5% |
| DPS Pensions And Securities | 2025 | 1961 | 64 | 3.2% | 2529 | 2348 | 180 | 1 | 7.1% |
| IR Industrial Relations | 1255 | 1136 | 119 | 9.4% | 1339 | 1214 | 124 | 1 | 9.3% |
| EDU Education | 806 | 797 | 9 | 1.1% | 878 | 860 | 18 | | 2.1% |
| PHD Public Health | 605 | 542 | 63 | 10.4% | 704 | 623 | 80 | 1 | 11.4% |
| PER Personnel | 30 | 30 | 0 | 0.0% | 39 | 37 | 2 | | 5.1% |
| DCD Civil Defense | 26 | 26 | 0 | 0.0% | 28 | 28 | 0 | — | 0.0% |
| Total Original Defendants | 7608 | 6742 | 866 | 11.4% | 9583 | 7732 | 1848 | 3 | 19.3% |

1. Information obtained from Plaintiff Exhibit 3 and Defendant Report to Court of August 1970.