**Phillip PARADISE, Jr., Individually and on behalf of the class similarly situated, Plaintiffs,**

**United States of America, Plaintiff and Amicus Curiae,**

v.

**Jerry SHOEMAKER, as Director of the Alabama Department of Public Safety, his agents, assigns and successors in office, et al., Defendants.**

**Civ. A. No. 3561–N.**

United States District Court,
D. Alabama, N. D.

April 13, 1979.

John L. Carroll and Dennis N. Balske, Montgomery, Ala., for plaintiffs.

Barry E. Teague, U. S. Atty., M. D. Ala., Montgomery, Ala., and Gerald S. Hartman, Douglas B. Huron, and Cynthia Drabek, Civil Rights Div., Dept. of Justice, Washington, D. C., for the United States.

Charles A. Graddick, Atty. Gen., Montgomery, Ala., Edward L. Hardin, Jr., Birmingham, Ala., and Maury D. Smith and David R. Boyd, Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, Ala., for defendants.

## MEMORANDUM

JOHNSON, Chief Judge.

In 1972, this Court found that the Alabama Department of Public Safety had "engaged in a blatant and continuous pattern and practice of discrimination in hiring . . . both as to troopers and supporting personnel." *NAACP v. Allen,* 340 F.Supp. 703, 705 (M.D.Ala.1972). The Court ordered that defendants hire one black trooper for each white trooper hired "until approximately twenty-five (25) percent of the Alabama state trooper force is comprised of Negroes." *Id.,* at 706. This order was affirmed on appeal and, in 1975, restated emphatically in granting plaintiffs' motion for supplemental relief. Now, seven years later, defendants plead confusion about the 1972 order and ask the Court to clarify its meaning. They ask whether the twenty-five percent hiring quota applies to the entire state trooper force or just to entry-level troopers. On this point, there is no ambiguity. The Court's order required that one-to-one hiring be carried out until approximately twenty-five percent of the *state trooper force* is black. It is perfectly clear that the order did not distinguish among troopers by rank.[1] The only distinc-

---

1. Defendants apparently take the position that the term "state trooper" refers only to arrest-ing officers who hold an entry-level position. When such an officer is promoted, he is no

tion recognized by the Court was between the state troopers and "those secretaries, clerks, and others who comprise the supporting personnel," the two groups together making up the Department of Public Safety. *Id.*, at 705. The term "state troopers" obviously refers to the entire force of sworn officers, not just to those in the entry-level rank.

Seven years have passed since this case was first before the Court, and defendants have yet to achieve full compliance with the Court's order. That they wish to free themselves from the stigma of non-compliance in the name of "clarification" is understandable but not excusable. This motion is properly considered as one for supplemental relief.

■ The gist of defendants' argument is that the order "transcend[s] affirmative relief designed to effectively off-set the effects of past discrimination." This is so, defendants contend, because the Department's promotion policy prohibits lateral hiring and requires advancement through the ranks. For the state trooper force to be twenty-five percent black, therefore, the ratio of blacks in entry-level positions must approach 37.5 percent. Defendants argue that this result "exclude[s] more qualified white applicants from entry-level positions than is constitutionally permissible." For supplemental relief, defendants request that the twenty-five percent quota be stricken and that one-to-one hiring continue only until (a) a new hiring list is created through the use of a valid examination, or (b) twenty-five percent, or (c) fifteen percent of the *entry level positions* are filled by blacks.

This Court does not write upon a clean slate. The issues raised by defendants have already been litigated and decided and, pursuant to the doctrine of the "law of the case," "that should be the end of the matter." *United States v. United States Smelting, Refining & Mining Co.*, 339 U.S. 186, 70 S.Ct. 537, 94 L.Ed. 750 (1950). The

fate of this motion must necessarily follow that of defendants' second appeal in *Morrow v. Dillard*, 580 F.2d 1284 (5th Cir. 1978) (en banc). There the Mississippi Highway Patrol sought to challenge an affirmative hiring order entered by the district court on remand. The Fifth Circuit held that, in remanding the case to the district court to fashion appropriate relief, it had impliedly affirmed the constitutionality of an affirmative hiring order. Therefore, the "law of the case" doctrine barred further consideration of that issue. *A fortiori* the doctrine bars consideration of the motion tendered by defendants. One need not look for implied approval of this Court's 1972 order; the Fifth Circuit expressly upheld it in *NAACP v. Allen*, 493 F.2d 614 (1974). The court held that,

. . . the conclusion of the district judge that quota relief was essential to make meaningful progress towards eliminating the unconstitutional practices and to overcome the patrol's thirty-seven year reputation as an all-white organization is supported by fact and law. The supplemental record here provides an unusual confirmation of the feasibility, wisdom, and efficacy of the decree.

*Id.*, at 620–621. Unless one of the three exceptions to the "law of the case" doctrine applies, then, there is no open question to be resolved. None of the exceptions do apply. There has been neither a subsequent trial nor any substantially different evidence. Nor, after *Morrow v. Dillard*, can it be said that controlling authority has made a contrary decision of the applicable law, or that the prior decision was clearly erroneous. Citing this case with approval, *Morrow v. Dillard* reaffirmed the "equitable power of federal courts to remedy the effects of unconstitutional acts through race-conscious means." 580 F.2d, at 1294.

■ Even if this Court could write on a clean slate, it finds no constitutional reason to edit its prior order. In that order, the Court did not impose promotional quotas;

---

longer a "state trooper" but a corporal, sergeant, lieutenant, captain, or major. Even if this argument possesses the slightest patina of

plausibility, there can be no question that the Court did not so define "state trooper" in 1972.

rather it set a hiring quota, calculated as a percentage of the entire trooper force, to be achieved by the employment of persons at the entry-level rank. Defendants now argue that such quotas may only be set as a percentage of the entry-level rank, not as a percentage of all arresting officers. The very cases cited by defendants, however, prove just the contrary! In *Officers for Justice v. Civil Service Commission*, 371 F.Supp. 1328, 1342 (N.D.Calif.1973), the court required that three minorities be hired for every two whites "until the total number of minority policemen within the police department equals, at a minimum, 30 percent *of the total number of policemen within the department*" (emphasis added). Likewise, in *EEOC v. Local 638*, 532 F.2d 821, 830 (2d Cir. 1976), the court held, "we affirm the use of such a [membership] goal *with respect to overall membership* in local 28 and the apprenticeship program" (emphasis added). And in *Erie Human Relations Commission v. Tullio*, 360 F.Supp. 628, 629 (W.D.Pa.1973), the court denied a motion to modify its order requiring one-for-one hiring until ten blacks were hired, "in order that the racial representation on the city police force be brought into a rough approximation of conformity of the racial representation in the city." The same measure of relief explicitly mandated in these cases has been implicitly recognized in other employment discrimination cases. *Rios v. Enterprise Association Steamfitters Local 638*, 501 F.2d 622 (2d Cir. 1974); *Carter v. Gallagher*, 452 F.2d 315 (8th Cir. 1971); *United States v. City of St. Louis*, 418 F.Supp. 383 (E.D.Mo.1976), aff'd in part, rev'd in part, 549 F.2d 506 (8th Cir. 1977).

To modify this order would be to do less than the law requires, which is to eradicate the continuing effects of past unlawful practices. In 1972, defendants were not just found guilty of discriminating against blacks in hiring to entry-level positions. The Court found that in thirty-seven years there had never been a black trooper at any rank. One continuing effect of that discrimination is that, as of November 1, 1978, out of 232 state troopers at the rank of corporal or above, *there is still not one black*. The quota fashioned by the Court provides an impetus to promote blacks into those positions. To focus only on the entry-level positions would be to ignore that past discrimination by the Department was pervasive, that its effects persist, and that they are manifest. As the Fifth Circuit has recognized, the order in this case does not seek to grant proportional representation in public employment to the black citizens of Alabama. *NAACP v. Allen*, 493 F.2d at 621. The order in this case is but the necessary remedy for an intolerable wrong. Accordingly, the motion for supplemental relief will be denied.