**Phillip PARADISE, Jr., individually and on behalf of the class similarly situated, Plaintiffs,**

**United States of America, Plaintiff and Amicus Curiae,**

v.

**Byron PRESCOTT, as Director of the Alabama Department of Public Safety, etc., et al., Defendants,**

**V.E. McClellan, et al., Defendants-Intervenors.**

Civ. A. No. 3561–N.

United States District Court, M.D. Alabama, N.D.

Oct. 28, 1983.

John L. Carroll, Dennis N. Balske, Montgomery, Ala., for plaintiffs.

John C. Bell, U.S. Atty., Montgomery, Ala., Cynthia Drabek, Dept. of Justice, Washington, D.C., for U.S.

Charles A. Graddick, Richard N. Meadows, Rosa H. Davis, Montgomery, Ala., Edward L. Hardin, Jr., Birmingham, Ala., Ray Acton, Ken Wallis (legal adviser for governor), Montgomery, Ala., for defendants.

James S. Ward, Birmingham, Ala., for defendants-intervenors.

### ORDER

MYRON H. THOMPSON, District Judge.

This cause is now before the court on the plaintiffs' April 7, 1983, motion to enforce the terms of two previously entered consent decrees. A hearing was held on the motion on May 27, 1983. For reasons which follow, the plaintiffs are entitled to relief.

### I.

On February 10, 1972, the court found that the defendant officials of the Alabama Department of Public Safety had "engaged in a blatant and continuous pattern and practice of discrimination in hiring ... as to troopers." *NAACP v. Allen*, 340 F.Supp. 703, 705 (M.D.Ala.1972), *aff'd*, 493 F.2d 614 (5th Cir.1974). The court ordered the defendants to hire one black trooper for each white trooper hired "until approximately twenty-five (25) percent of the Alabama state trooper force is comprised of Negroes." 340 F.Supp. at 706.

On February 16, 1979, a partial consent decree was approved and entered by the court, following a reopening of the case by the plaintiffs. This decree required, among other things, that the defendants institute

a promotion procedure which is in conformity with the 1978 *Uniform Guidelines of Selection Procedure*, 43 Fed. Reg. 38290, [28 C.F.R. 50.14] and which, in addition, when used either for screening or ranking will have little or no adverse impact on blacks seeking promotion to corporal.

On August 18, 1981, another consent decree was approved and entered by the court in response to the defendants' request that the court approve their newly developed selection procedure, which included a written examination component. The plaintiffs and the United States had objected to the selection procedure on the ground that it failed to comply with the Uniform Guidelines, as required by the 1979 decree. The 1981 decree provided in relevant part as follows:

5. If the selection procedure has little or no adverse impact against black applicants, selections shall be made in rank order.... Whether or not the selection procedure has "little or no adverse impact" will be measured by the "four-fifths rule" set forth in Section 4 D of the *Uniform Guidelines, supra.* If the parties cannot agree whether the selection procedure has an adverse impact, the matter shall be submitted to the Court for resolution. No promotions to State Trooper Corporal positions shall be made pending resolution of the question of adverse impact.

6. If the parties agree, or the Court finds, that the selection procedure has an adverse impact, promotions shall be made in a manner that does not result in adverse impact for the initial group of promotions or cumulatively during use of the procedure. Defendants shall submit to plaintiffs their proposal for making promotions in conformity with the Partial Consent Decree and with this Decree. If the parties do not agree on the method for making promotions, the matter shall be submitted to the Court for resolution. No promotions to State Trooper Corporal positions shall be made until the parties have agreed in writing or the Court has ruled upon the method to be used for making promotions with little or no adverse impact.

7. If the selection procedure has an adverse impact against blacks seeking promotion to corporal, defendants shall examine the results of each component of the selection procedure to identify the source(s) of the adverse impact and shall

revise the procedure so as to avoid adverse impact in the future. Defendants shall provide plaintiffs with data showing the impact of each component of the selection procedure and an item-by-item analysis of the impact of the written test. The parties shall attempt to agree upon modifications in the selection procedure for future administrations. If the parties are unable to agree upon the procedure to be used after the first administration of the selection procedure and the method of using that procedure, the matter shall be submitted to the Court for resolution.

After the 1981 decree was approved and entered, the defendants administered the selection procedure to all applicants seeking promotion to corporal. The procedure was administered to 262 persons—202 (77.1%) white persons and 60 (22.9%) black persons.[1] The highest ranked black person, based on the selection procedure, holds the 80th place on the list of rankings.

There is no dispute among the parties that the defendants need additional corporals and that they need at least 15 of them as soon as possible. The plaintiffs and the United States contend that the selection procedure has an adverse impact and, in accordance with the 1981 decree, may not be used by the defendants. The defendants contend that the procedure does not have an adverse impact and may be used.

By another order entered this date the court has allowed four white employees of the Alabama Department of Public Safety to intervene as defendant-intervenors. Their intervention is on a prospective basis only; they are not allowed to challenge prior orders, judgments, and decrees of the court.

## II.

Since the parties have been unable to agree on whether the selection procedure has an impermissible adverse racial impact, the court in accordance with the 1981 decree must now make that determination.

To determine whether the selection procedure has an adverse impact, the decree refers to the four-fifths rule set forth in section 4 D of the Uniform Guidelines, which provides in relevant part:

*Adverse impact and the "four-fifths rule."* A selection rate for any race, sex, or ethnic group which is less than four-fifths (⅘) (or eighty percent) of the rate for the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of adverse impact, while a greater than four-fifths rate will generally not be regarded by Federal enforcement agencies as evidence of adverse impact.

Applying the four-fifths rule and assuming fifteen candidates are to be promoted in rank order based on the selection procedure results, the success rate for white persons would be $^{15}/_{202}$ or 7.4%, and the success rate for black persons would be $^{0}/_{60}$ or 0%. Zero is, of course, less than four-fifths of 7.4. Indeed, even if seventy-nine corporals were promoted in rank order, none would be black. Short of outright exclusion based on race, it is hard to conceive of a selection procedure which would have a greater discriminatory impact.

Also relying on section 4 D, the defendants contend that their selection procedure nonetheless does not have an adverse impact. The portion of the section relied upon provides as follows:

Greater differences in selection rate may not constitute adverse impact where the differences are based on small numbers and are not statistically significant, or where special recruiting or other programs cause the pool of minority or female candidates to be atypical of the normal pool of applicants from that group.

The defendants contend that the one-to-one hiring ratio for state troopers is a "special program" which has resulted in an atypical pool because black troopers scored lower on a "hiring test" than did white troopers. The defendants contend that the court should afford them an opportunity to show

1. This number includes one trooper, James Cox, whose race is identified as "other."

this. The court agrees with the position of the United States and the plaintiffs that a hearing is unnecessary. Accepting the defendants' anticipated evidence as true, this court must nonetheless conclude that the evidence is an unacceptable basis to rest a claim of atypicality. The hiring test, to which the defendants wish to link their promotion procedure, has not been subjected to an adverse impact determination, nor has it been validated.[2]

For the above reasons, the court concludes that the selection procedure has an adverse impact against black candidates. *United States v. City of Montgomery*, 19 E.P.D. ¶ 9239, pp. 7412–15 (M.D.Ala.1979).

### III.

Since the defendants' selection procedure has an adverse impact on black candidates for the position of corporal, the 1981 decree prohibits the defendants' use of the procedure. Furthermore, the defendants are now required by the decree to fashion and submit to the court a proposal to promote to corporal, from among qualified candidates, at least 15 persons in a manner which will not have adverse impact. And if the plaintiffs, the United States, and the defendants cannot agree to a promotion plan, they are required by the decree to submit the matter to the court for resolution.

As already noted, this lawsuit is now before the court on the plaintiffs' motion to enforce the terms of two previously entered decrees. The court will grant the plaintiffs' motion to enforce to the extent the motion seeks compliance with the immediately preceding requirements in the 1981 decree. An appropriate order will be entered declaring that the selection procedure has an adverse racial impact and may not be used by the defendants; requiring that the defendants submit an appropriate proposal for the needed promotions; and setting a deadline for submission of the matter to the court if the plaintiffs, the United States, and the defendants are unable to agree upon a promotion plan. If the plaintiffs, the United States, and the defendants should agree to a promotion plan, the defendant-intervenors will be allowed an opportunity to file responses and objections to the plan.

Also, as a result of the finding of adverse impact, the defendants are required by the 1981 decree to "examine the results of each component of the selection procedure to identify the sources of the adverse impact," to "revise the procedure so as to avoid adverse impact in the future," to "provide plaintiffs with data showing the impact of each component of the selection procedure and an item-by-item analysis of the impact of the written test," and, if the parties cannot agree upon modifications to cure the adverse impact, to petition the court to resolve the disputed matters. It does not appear, however, that the plaintiffs—who are the movants at this stage of the proceedings—are seeking enforcement of this part of the 1981 decree, and the court will therefore not enter an order compelling enforcement.[3]

Accordingly, for the above reasons, it is ORDERED:

(1) That the plaintiffs' April 7, 1983, motion to enforce the terms of the February 16, 1979, partial consent decree and the August 18, 1981, consent decree, be and it is hereby granted to the extent hereafter set forth;

(2) That it is hereby declared that the defendants' selection procedure for promotion to corporal has an adverse racial impact and that said selection procedure may

---

**2.** The defendants do not contend that the candidate pool in some way distorts the labor market to the advantage of the plaintiffs.

**3.** However, if the plaintiffs are seeking enforcement of the part of the 1981 decree regarding modifications of the selection procedure, then the plaintiffs should file a pleading so indicating.

Also, if the defendants desire to invoke this part of the decree then they need only carry out their responsibilities under this part and, if the parties are unable to agree upon the modifications, petition the court to resolve the matter.

not be used by the defendants for promotion purposes;

(3) That on or before November 10, 1983, the defendants shall file with the court a plan to promote to corporal, from qualified candidates, at least 15 persons in a manner that will not have an adverse racial impact;

(4) That on or before November 18, 1983, the plaintiffs, the United States, and the defendant-intervenors may file any objections and counter-proposals;

(5) That, if by November 25, 1983, the plaintiffs, the United States, and the defendants have not filed a promotion plan agreed to by all said parties, the issue of corporal promotions shall be deemed submitted for resolution by the court; and

(6) That, if the plaintiffs, the United States, and the defendants file an agreed-to promotion plan, the defendant-intervenors are allowed seven days from the date of filing to file any responses and objections to the plan.