Phillip **PARADISE, Jr., individually and on behalf of the class similarly situated, Plaintiffs,**

**United States of America, Plaintiff and Amicus Curiae,**

v.

Byron **PRESCOTT, as Director of the Alabama Department of Public Safety, etc., et al., Defendants,**

**V.E. McClellan, et al., Defendant-Intervenors.**

**Civ. A. No. 3561–N.**

United States District Court, M.D. Alabama, N.D.

Dec. 15, 1983.

Dennis N. Balske, Montgomery, Ala., for plaintiffs.

John C. Bell, U.S. Atty., Montgomery, Ala., Cynthia Drabek, Dept. of Justice, Washington, D.C., for U.S.

Charles A. Graddick, Richard N. Meadows, Rosa H. Davis, Personnel Director, Montgomery, Ala., Edward L. Hardin, Jr., Birmingham, Ala., Ray Acton, Ken Wallis, Legal Adviser for the Governor, Montgomery, Ala., for defendants.

James S. Ward, Birmingham, Ala., for defendant-intervenors.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

The present phase of the proceedings in this lawsuit began on April 7, 1983, when the plaintiffs filed a motion to enforce the terms of two previously entered consent decrees. In accordance with these decrees and as a result of recent developments, this court must determine what procedure the Alabama Department of Public Safety must use in promoting troopers. The court understands that the department is in need of at least 15 new corporals immediately.

I.

In 1972, then Chief District Judge Frank M. Johnson, Jr., remarked in this case that "[i]n the thirty-seven-year history of the patrol there has never been a black trooper and the only Negroes ever employed by the department have been nonmerit system laborers." *NAACP v. Allen*, 340 F.Supp. 703, 705 (M.D.Ala.1972). The court found that the department had "engaged in a blatant and continuous pattern and practice of discrimination in hiring ... both as to troopers and supporting personnel;" and the court ordered that the department hire one black trooper for each white trooper hired "until approximately twenty-five (25) percent of the Alabama state trooper force is comprised of Negroes." *Id.* at 705, 706. The order was affirmed on appeal. 493 F.2d 614 (5th Cir.1974).

In a later proceeding in this case, Judge Johnson was asked to clarify "whether the twenty-five percent hiring quota applies to the entire state trooper force or just to entry-level troopers." *Paradise v. Shoemaker*, 470 F.Supp. 439, 440 (M.D.Ala. 1979). The court responded that "there is no ambiguity" and that the twenty-five percent quota applies "to the entire force of sworn officers, not just to those in the entry-level rank." *Id.* at 440–41. The court observed that the defendants were guilty of discrimination not just in hiring, but in all ranks of the patrol. The court then emphasized that,

> One continuing effect of that discrimination is that, as of November 1, 1978, out of 232 state troopers at the rank of corporal or above, *there is still not one black*. The quota fashioned by the Court provides an impetus to promote blacks into those positions. To focus only on the entry-level positions would be to ignore that past discrimination by the Department was pervasive, that it effects persist, and that they are manifest.

*Id.* at 442 (emphasis in original).

On February 16, 1979, the parties entered into a consent decree which required that the department develop and implement a valid promotion procedure for the rank of corporal. The decree gave the department a year to meet this objective, after which the department was to do the same, in turn, for the ranks of sergeant, lieutenant, captain and major. This time schedule was not met, and on August 18, 1981, the parties entered into another consent decree which allowed the department to administer a newly developed promotion procedure for the rank of corporal, but prohibited any promotions under the procedure until it had been first determined that the procedure had "little or no adverse impact against black applicants." According to the decree, adverse impact was to be determined and measured by the "four-fifths rule" set forth in Section 4D of the Uniform Guidelines of Employee Selection Procedures, 28 C.F.R. § 50.14 (1983).

On April 7, 1983, the plaintiffs filed a motion seeking enforcement of the 1979 and 1981 consent decrees and, in particular, a determination whether the department's promotion procedure for corporal had an adverse racial impact. The department needed at least 15 new corporals, and the parties were unable to agree whether the procedure developed in 1981 could be used for the promotions. On October 28, 1983, the court found that the procedure did have an adverse racial impact on black applicants and, in accordance with the 1981 consent decree, prohibited use of the procedure. *Paradise v. Prescott*, 580 F.Supp. 171 (M.D.Ala.1983).

The parties have been unable to agree upon another selection procedure for the 15 needed corporals; and, as required by the 1981 consent decree, they have requested that the court fashion a procedure.

II.

On February 10, 1984, less than two months from today, twelve years will have passed since this court condemned the racially discriminatory policies and practices of the Alabama Department of Public Safety. Nevertheless, the effects of these policies and practices remain pervasive and conspicuous at all ranks above the entry-level position. Of the 6 majors, *there is still not one black*. Of the 25 captains, *there is still not one black*. Of the 35 lieutenants, *there is still not one black*. Of the 65 sergeants, *there is still not one black*. And of the 66 corporals, *only four are black*. Thus, the department *still* operates an upper rank structure in which almost every trooper obtained his position through procedures that totally excluded black persons. Moreover, the department is *still* without acceptable procedures for advancement of black troopers into this structure, and it does not appear that any procedures will be in place within the near future. The preceding scenario is intolerable and must not continue. The time has now arrived for the department to take affirmative and substantial steps to open the upper ranks to black troopers.

■ In light of the severe racial imbalances in the upper ranks, the court agrees with the plaintiffs that for a period of time at least 50% of all those promoted to corporal and above must be black troopers, as long as there are qualified black troopers available.[1] The court also agrees with the plaintiffs that if there is to be within the near future an orderly path for black troopers to enter the upper ranks, any relief fashioned by the court must address the department's delay in developing acceptable promotion procedures for all ranks. The court will therefore enter an order requiring that, for each white trooper promoted to a higher rank, the department shall promote one black trooper to the same rank, if there is a black trooper objectively qualified for the promotion. This requirement shall remain in effect as to each rank above entry level until either 25% of the rank is black or the department has developed and implemented for the rank a promotion procedure which meets the requirements of the prior orders and decrees of this court and all other relevant legal requirements.[2] The court will also require that the department submit to the court for the court's approval a schedule for the development of promotion procedures for all ranks above the entry-level position. The schedule should be based upon realistic expectations.

### III.

■ The relief fashioned by the court today is warranted by law. Where there has been unlawful discrimination, a district court has not only the power but the responsibility to fashion a remedy that will as much as possible eliminate the discriminatory effects of past discrimination as well as bar like discrimination in the future. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1972). As the evidence in the present case dramatically demonstrates, these effects will not wither away of their own accord. Furthermore, in fashioning relief, a court should include race-conscious requirements if they are necessary, reasonable, and otherwise appropriate under the circumstances.[3] *United States v. City of Miami*, 664 F.2d 435 (5th Cir.1981) (en banc) (former Fifth Circuit); *United States v. City of Alexandria*, 614 F.2d 1358 (5th Cir.1980).

The promotional quotas imposed by the court today are clearly necessary. The racial imbalances in the upper ranks of the Alabama Department of Public Safety remain egregious and are now of long duration; and, furthermore, it is apparent from the history of this lawsuit that without immediate, affirmative, race-conscious action these intolerable disparities will not dissipate within the near future.

■ The promotional quotas are also reasonable. They are specifically tailored to redress the continuing effects of past discrimination, but they do "not unnecessarily trammel the interest of white employees."[4] *United Steelworkers v. Weber*,

1. In light of the department's failure after almost twelve years to eradicate the continuing effects of its own discrimination and to develop acceptable promotion procedures and in light of the severity of the existing racial imbalances, a credible argument could be made that all 15 of the new corporals should be black, followed perhaps by a one-to-one ratio. However, the plaintiffs are not seeking this relief.

2. According to the *1980 Census of Population* published by the U.S. Department of Commerce, the State of Alabama is approximately 26% black. In *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 340 n. 20, 97 S.Ct. 1843, 1857 n. 20, 52 L.Ed.2d 396 (1977), the Supreme Court stated that "absent explanation, it is ordinarily to be expected that nondiscrimi-

natory hiring practices will in time result in a work force more or less representative of the racial and ethnic composition of the population in the community from which employees are hired."

3. In an earlier order this court demonstrated dramatically the efficacy of quotas, over other remedies, in instances where blacks have historically been completely excluded or almost completely excluded from employment. *NAACP v. Dothard,* 373 F.Supp. 504 (M.D.Ala.1974) (Johnson, C.J.)

4. The court has allowed four white troopers to intervene as defendant-intervenors. Their intervention is on a prospective basis only; they are not allowed to challenge prior orders, judg-

443 U.S. 193, 208–09, 99 S.Ct. 2721, 2730, 61 L.Ed.2d 480 (1979). They do not require the discharge or demotion of a white trooper or his replacement with a black trooper; nor do they create an absolute bar to the advancement of white troopers. Moreover, the quotas are but a temporary measure, designed not to maintain a racial balance, but simply to eliminate a manifest and chronic racial imbalance. Finally, only qualified black troopers will be considered for promotion under the quotas. *See, e.g., United Steelworkers v. Weber, supra; United States v. City of Miami, supra; United States v. City of Alexandria, supra.*

The quotas imposed by the court are also not without legal precedent. In *United States v. City of Alexandria, supra,* the former Fifth Circuit approved a consent decree imposing on a municipality promotional quotas ranging from 25 to 50%. Under the decree, the quotas are to remain in effect until the municipality achieves the same percentages of blacks and women as are in the overall work force in the affected localities. *See also, e.g., E.E.O.C. v. American Telephone and Telegraph Company,* 556 F.2d 167 (3rd Cir.1977), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3145, 57 L.Ed.2d 1161 (1978).

Two factors in the present case make the claim for promotional quotas even stronger than it was in *City of Alexandria.* In contrast to the earlier case, here the court has made a specific finding of long-term, open and pervasive racial discrimination. Moreover, this court has before it a record demonstrating that without promotional quotas the continuing effects of this discrimination cannot be eliminated. Nevertheless, the quotas imposed by this court are substantially less constraining than those imposed in *City of Alexandria.* Under the order this court will enter today, the Alabama Department of Public Safety

has the prerogative to end the promotional quotas at any time, simply by developing acceptable promotion procedures. It is thus possible for the use of the quotas to be a one-time occurrence.

### IV.

Finally, as this lawsuit moves into its twelfth year, it is clear that the court and the parties should now contemplate bringing this litigation to an end. The court therefore hopes that, in addition to achieving the above objectives, the remedy imposed today will hasten the day when the Alabama Department of Public Safety is no longer under the supervision of this court.

An appropriate order will be entered in accordance with this memorandum opinion.

---

ments, and decrees of the court. *United States v. California Co-operative Canneries,* 279 U.S. 553, 556, 49 S.Ct. 423, 424, 73 L.Ed. 838 (1929); *Smith v. Missouri Pac.R. Co.,* 615 F.2d 683 (5th Cir.1980). *See Thaggard v. City of Jackson,* 687 F.2d 66, 68 (5th Cir.1982), *cert. denied sub nom.*

*Ashley v. City of Jackson,* —— U.S. ——, 104 S.Ct. 255, 78 L.Ed.2d 241 (1983). *See also* 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 24.16[5]; 7A C. Wright & A. Miller, Federal Practice and Procedure § 1920.