**Johnny REYNOLDS, et al., Plaintiffs,**

v.

**ALABAMA DEPARTMENT OF TRANSPORTATION, et al., Defendants.**

**Civil Action No. 85–T–665–N.**

United States District Court, M.D. Alabama, Northern Division.

July 15, 1997.

Laurie Edelstein, Special Master, Rabinowitz, Boudin, Standard, Krinsky & Lienerman, P.C., New York City, pro se.

Winn S.L. Faulk, Special Master, Mobile, AL, pro se.

Leonard Gilbert Kendrick, Montgomery, AL, Richard J. Ebbinghouse, Robert L. Wiggins, Jr., Jon C. Goldfarb, Gregory O. Wiggins, C. Paige Williams, Rebecca Anthony, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, Julian L. McPhillips, Jr., McPhillips, Shinbaum, Gill & Stoner, Montgomery, AL, Rick Harris, Glassroth & Associates, Montgomery, AL, for Johnny Reynolds, Cecil Parker, Frank Reed, Ouida Maxwell, Martha Ann Boleware, Peggy Vonsherie Allen, Jeffrey W. Brown.

Leonard Gilbert Kendrick, Montgomery, AL, Richard J. Ebbinghouse, Robert L. Wiggins, Jr., Jon C. Goldfarb, Gregory O. Wiggins, C. Paige Williams, Rebecca Anthony, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, Claudia H. Pearson, Longshore, Nakamura & Quinn, Birmingham, AL, Julian L. McPhillips, Jr., McPhillips, Shinbaum, Gill & Stoner, Montgomery, AL, Rick Harris, Glassroth & Associates, Montgomery, AL, for Robert Johnson.

Florence Belser, Montgomery, AL, pro se.

Raymond P. Fitzpatrick, Jr., David P. Whiteside, Jr., Whiteside & Fitzpatrick, Birmingham, AL, for William Adams, Cheryl Caine, Tim Colquitt, William Flowers, Wilson Folmar, George Kyser, Becky Pollard, Ronnie Pouncey, Terry Robinson, Tim Williams.

William K. Thomas, R. Taylor Abbot, Jr., Cabaniss, Johnston, Gardner, Dumas &

---

O'Neal, Birmingham, AL, Jeff Sessions, Attorney General, Office of the Attorney General, Montgomery, AL, Patrick H. Sims, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile AL, for Gary Mack Roberts.

Bert S. Nettles, Lisa Wright Borden, London, Yancey, Elliott & Burgess, Birmingham, AL, William F. Gardner, William K. Thomas, R. Taylor Abbot, Jr., Cabaniss, Johnston, Gardner Dumas & O'Neal, Birmingham, AL, Jeff Sessions, Attorney General, Office of the Attorney General, Montgomery, AL, Patrick H. Sims, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, for Halycon Vance Ballard, Department of Personnel, State of Alabama.

Bert S. Nettles, Lisa Wright Borden, London, Yancey, Elliott & Burgess, Birmingham, AL, William F. Gardner, William K. Thomas, R. Taylor Abbot, Jr., Cabaniss, Johnston, Gardner Dumas & O'Neal, Birmingham, AL, Jeff Sessions, Attorney General, Office of the Attorney General, Montgomery, AL, Jack Franklin Norton, Alabama Department of Transportation, Legal Division, Montgomery, AL, Patrick H. Sims, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, for Department of Transportation, State of Alabama.

William F. Gardner, William K. Thomas, R. Taylor Abbot, Jr., Cabaniss, Johnston, Gardner Dumas & O'Neal, Birmingham, AL, Jeff Sessions, Attorney General, Office of the Attorney General, Montgomery, AL, Patrick H. Sims, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, for James E. Folsom, Jr.

***ORDER***

MYRON H. THOMPSON, Chief Judge.

In this longstanding and complex litigation, plaintiffs—who are African–American and represent a class of African–American merit and non-merit system employees and applicants—charge defendants with employment discrimination based on race in the Alabama Department of Transportation. The defendants include the Alabama Department of Transportation, the Alabama State Personnel Board, and several State officials. The central focus of this litigation has been on the creation and implementation of an open and fair hiring and promotion system, in which everyone can apply and be considered for positions and then judged on his or her merit, and his or her merit alone, without regard to race.

As this litigation now moves into its twelfth year, the time is long overdue for the Transportation Department and the Personnel Department to develop and implement a fair and open hiring and promotion system, applicable to all, in which African–Americans and all other persons may be judged on their merit alone. The court wants the system *now.*

I.

The history of this litigation and other litigation reflects that, for the first three-quarters of this century, the State of Alabama and its agencies have excluded African–Americans, because of their race, from employment in positions other than low and menial ones, and that for the last quarter of this century, despite outstanding court orders, the Transportation Department has manipulated, and even circumvented, State personnel procedures to avoid the hiring and promotion of African–Americans into responsible and non-menial jobs.

In 1970, in *United States v. Frazer,* 317 F.Supp. 1079 (M.D.Ala.1970), this court found that agencies of the State of Alabama had engaged in a State-sanctioned policy of manipulating and circumventing the State's personnel procedures so as to avoid the hiring and promotion of African–Americans. 317 F.Supp. at 1084–87. The court entered an order broadly prohibiting State officials from "engaging in any employment practices, including recruitment, examination, appointment, training, promotion, retention, or any other personnel action, for the purpose or with the effect of discriminating against any employee, or actual or potential applicant for employment, on the ground of race or color." *Id.* at 1090. The court further ordered that State officials "shall not appoint or offer a position to a lower-ranking white applicant on a certificate in preference to a higher-ranking available Negro applicant, unless the defendants have first contacted and inter-

viewed the higher-ranking Negro applicant and have determined that the Negro applicant cannot perform the functions of the position, is otherwise unfit for it, or is unavailable." *Id.* at 1091.

In 1976, the court made further findings that State agencies, specifically including the Transportation Department, were continuing to manipulate and circumvent State personnel procedures to avoid the hiring and promotion of African–Americans. *United States v. Frazer,* 1976 WL 729, 14 Empl. Prac. Dec. ¶ 7599 (M.D.Ala.1976). The court ordered that State officials "shall insure that blacks who are appointed to ... job classifications common to several agencies shall be appointed to all agencies in which such vacancies occur. No defendant shall attempt to avoid this provision by deferring requests for certification until blacks are available." *Id.* at *7.

## II.

In 1985, the plaintiffs filed the instant lawsuit charging the Transportation Department and the Personnel Department with employment discrimination based on race. The plaintiffs based this lawsuit on the following: Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17; the fourteenth amendment to the United States Constitution, as enforced by 42 U.S.C.A. § 1983; and 42 U.S.C.A. § 1981. The jurisdiction of the court was invoked pursuant to 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 2000e–5(f)(3). The plaintiffs charged that, despite the orders entered in *Frazer,* the Transportation and Personnel Department were continuing to manipulate and circumvent State personnel procedures so as to avoid hiring and promoting blacks.

In 1993, the parties reached a partial settlement, subsequently embodied in three consent decrees. In the wake of this new settlement, the court allowed a group of non-class members—consisting mostly of white employees of the Department of Transportation and now commonly referred to as the "Adams intervenors"—to intervene and challenge any race-conscious provisions in the settlement. *Reynolds v. Roberts,* 846 F.Supp. 948 (M.D.Ala.1994).

On March 16, 1994, the court approved one of the consent decrees, now known as consent decree I. 1994 WL 899259 (M.D.Ala. 1994). The consent decree required that the Transportation Department and Personnel Department establish, in a timely manner, new, non-discriminatory personnel procedures that would allow African–Americans and all other employees to compete, openly and fairly, without regard to race, for positions. The decree provides for detailed requirements regarding, among other things, recruitment (art. I), training (art. XVI), and the early establishment of open and fair promotion procedures (arts. II, III, IV, VI VII, VIII, IX, X, XIV). These requirements would, among other things, significantly restrict even the opportunity by the Transportation Department to manipulate and circumvent personnel procedures in the future, so as to avoid the hiring and promotion of African–Americans. Because time was of the essence—it was important not only to abolish immediately the old discriminatory procedures but also to establish new non-discriminatory ones which would assure a fair and level playing field for all employees of the Transportation Department—the decree set time limits for compliance. In other words, the Transportation and Personnel Departments were required, within a certain period of time, to redress the past effects of their racially discriminatory policies and practices and to create and implement a personnel system that would not only be fair and open but that would also restrict the Departments' opportunity to continue to discriminate against African–Americans.

## III.

It is now three years since entry of the 1994 consent decree, and the Transportation and Personnel Departments still have not created and implemented the required new hiring-and-promotion system. In other words, African–Americans are still not only without open and fair procedures in which they may compete for positions based on their merit and without regard to race, they are being denied hiring and promotion opportunities altogether. The effect of the Departments' delay has been, for the most part,

to shut down permanent hiring and promotions altogether, and thereby essentially punish the plaintiffs for vindicating their statutory and constitutional rights. And to make matters worse, the Departments have, and are continuing, to assign supervisory duties and responsibilities to employees, with the assignment often made outside the important strictures set up by the consent decree. While admittedly these assignments are without actual promotions, there is the possibility that those receiving the assignments will in future competition for jobs enjoy the credit and experience conferred on them by the assignments.

For example, ¶ 4 of article III provides that, "Personnel will develop and thereafter use only selection criteria and procedures that have been validated in accordance with the Uniform Guidelines on Employee Selection Procedures. For the SPD Project job classes, such validation will be completed within two years of the effective date of this Decree." In early 1996, the Adams intervenors and the Transportation Department complained to the court that the Personnel Department was not complying in a timely manner with many of the provisions in the consent decree, and, in particular, with regard to the creation and implementation of a hiring and promotion scheme. They suggested that the court appoint a monitor to oversee Personnel Department's compliance with its responsibilities under the decree. In an order entered on February 7, 1996, the court stated: "Admittedly, it appears that the Personnel Department will fail to meet the deadline for fulfilling its obligations established in consent decree I, and that it will take at least another year before the procedures required by article ... III [and other articles] will be implemented. It further appears that, although it has known for some time that it would have great difficulty meeting the deadline imposed by consent decree I, the Personnel Department failed to notify the court and the other parties of this ex-

tremely important fact. This failure, according to the Department of Transportation, will greatly hinder its efforts to hire and promote needed personnel. This failure will also affect the plaintiffs and the Adams intervenors by delaying implementation of critically needed personnel procedures, delaying hiring and promotions, and ultimately delaying the implementation of consent decree I." [1] The court nevertheless declined to appoint a monitor at that time.

In an order entered on May 23, 1997, the court, at the request of the Personnel Department, extended the period for compliance with article III from two years to three and one-half years, giving the Transportation and Personnel Departments until December 31, 1997, to complete the validation studies.[2] This date was suggested by the Departments, and the Departments assured the court that the studies would be completed by then.[3] In the meantime, on February 13, 1997, the plaintiffs filed motions for contempt and further relief complaining that the Transportation and Personnel Department were continuing to fail to comply with the consent decree.[4]

The Personnel Department has now filed a motion contending that the validation studies cannot be fully completed until late 1999, and, of course, until the studies, no final hiring and promotion procedures can be put in place.[5] *As a result, the court and the parties are conceivably looking at the year 2000 and beyond before a final hiring and promotion plan for the Transportation Department can be in place.*

"The preceding scenario is intolerable and must not continue." *United States v. Paradise,* 480 U.S. 149, 163, 107 S.Ct. 1053, 1062, 94 L.Ed.2d 203 (1987) (quoting *Paradise v. Prescott,* 585 F.Supp. 72, 74 (M.D.Ala.1983)). The time is now long overdue for the Transportation and Personnel Departments "to take affirmative and substantial steps" to develop fair and open procedures for hiring

1. Doc. no. 922.

2. Doc. no. 1884.

3. *Id.*

4. Doc. nos. 1542 and 1543. A hearing was held on these motions on July 7–14, 1997, and the motions are now under submission for decision by the court.

5. Doc. no. 1980.

and promotion. *Id.* Each additional day of delay only frustrates further the opportunities for those employees who have already waited far too long to compete in a non-discriminatory manner for positions in the Transportation Department.[6]

Presented with what can only be described as a grave crisis, the court wishes to consider and have at its disposal all reasonable options to address these circumstances. One of the options suggested by the plaintiffs and the Adams intervenors is the appointment of a monitor or receiver to develop or facilitate the creation of long-needed open-and-fair personnel procedures for the Transportation Department. To that end, the court will require that the parties present their detailed proposals for appointment of a monitor or receiver to facilitate or develop hiring and promotion procedures.[7]

Accordingly, it is ORDERED that the parties submit to the court, by no later than July 30, 1997, their proposals for the appointment of a monitor or receiver who will develop, or facilitate the creation and implementation of, open and fair personnel procedures for defendants Alabama Department of Transportation and Alabama State Personnel Department as soon as possible.

---

6. The court must add that it is deeply troubled that the governor-appointed director of the Transportation Department currently contends, and has contended for the last five months, that he is too ill to have even his deposition taken in this case. The court is concerned as to whether there is a responsible decisionmaker at the helm of the Department.

7. In other cases, the court has approved "interim" personnel procedures for making permanent hiring and promotion decisions, when final procedures could not be developed on time. *See, e.g., Sims v. Montgomery County Com'n,* 890 F.Supp. 1520, 1525 (M.D.Ala.1995). The court is unaware that the Transportation and Personnel Departments have even contemplated the establishment of interim procedures.